# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH SIEGEL, Individually and On Behalf of All Others Similarly Situated,<br><br>                         Plaintiff,<br><br>         v.<br><br>THE BOSTON BEER COMPANY, INC., DAVID A. BURWICK, FRANK H. SMALLA, and C. JAMES KOCH,<br><br>                         Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Joseph Siegel ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by The Boston Beer Company, Inc. ("Boston Beer" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Boston Beer; and (c) review of other publicly available information concerning Boston Beer.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Boston Beer securities between April 22, 2021 and September 8, 2021, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Boston Beer is a high-end alcoholic beverage company that produces hard seltzer, malt beverages (i.e. beers), and hard cider at its cidery and under contractual arrangements at other brewery locations.

3.      On July 22, 2021, after the market closed, Boston Beer reduced its full year 2021 guidance, expecting earnings per share between $18 and $22, down from a prior range of $22 and $26.  The Company cited softer-than-expected sales in the hard seltzer category and overall beer industry and also stated that it had "overestimated the growth of the hard seltzer category in the second quarter."

4.      On this news, the Company's share price fell $246.54, or 26%, to close at $701.00 per share on July 23, 2021, on unusually heavy trading volume.

5.      On September 8, 2021, after the market closed, Boston Beer withdrew its 2021 financial guidance, citing decelerating sales of hard seltzer products. The Company also stated that it "expects to incur hard seltzer-related inventory write-offs, shortfall fees payable to 3rd party brewers, and other costs" for the remainder of fiscal 2021.

6.      On this news, the Company's share price fell $21.09, or 3.7%, to close at $538.31 per share on September 9, 2021, on unusually heavy trading volume.

7.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Boston Beer's hard seltzer sales were decelerating; (2) that, as a result, Boston Beer was reasonably likely to incur inventory write-offs; (3) that the Company was reasonably likely to incur shortfall fees payable to third party brewers; (4) that, as a result of the foregoing, Boston Beer's financial results would be adversely impacted; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

12. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

13. Plaintiff Joseph Siegel, as set forth in the accompanying certification, incorporated by reference herein, purchased Boston Beer securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

14. Defendant Boston Beer is incorporated under the laws of Massachusetts with its principal executive offices located in Boston, Massachusetts. Boston Beer's Class A common stock trades on the New York Stock Exchange ("NYSE") under the symbol "SAM."

15. Defendant David A. Burwick ("Burwick") was the Chief Executive Officer ("CEO") of Boston Beer at all relevant times.

16. Defendant Frank H. Smalla ("Smalla") was the Chief Financial Officer ("CFO") of Boston Beer at all relevant times.

17. Defendant C. James Koch ("Koch") is the founder of Boston Beer and was the Company's Chairman of the Board of Directors at all relevant times.

18.     Defendants Burwick, Smalla, and Koch (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

## Background

19.     Boston Beer is a high-end alcoholic beverage company that produces hard seltzer, malt beverages (i.e. beers), and hard cider at its cidery and under contractual arrangements at other brewery locations.

## Materially False and Misleading
## Statements Issued During the Class Period

20.     The Class Period begins on April 22, 2021. On that day, Boston Beer announced its first quarter 2021 financial results. The Company's press release stated, in relevant part:

> The Boston Beer Company, Inc. (NYSE: SAM) reported first quarter 2021 net revenue of $545.1 million, an increase of $214.5 million or 64.9% from the same period last year, mainly due to an increase in shipments of 60.1%. Net income for the first quarter was $65.6 million, an increase of $47.3 million or 259.6% from the same period last year. Earnings per diluted share were $5.26, an increase of $3.77 per diluted share, or 253.0% from the first quarter of 2020.  This increase was primarily due to increased net revenue, partially offset by increases in operating expenses. In the first quarter of 2020, the Company recorded pre-tax COVID-19

related reductions in net revenue and increases in costs that totaled $10.0 million or $0.60 per diluted share.

*      *      *

- Based on current spending and investment plans, full-year 2021 Non-GAAP earnings per diluted share[], which excludes the impact of ASU 2016-09, is now estimated at between $22.00 and $26.00, an increase from the previously communicated range of between $20.00 and $24.00.

21.    The above statements identified in ¶ 20 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that Boston Beer's hard seltzer sales were decelerating; (2) that, as a result, the Company's financial results would be adversely impacted; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

22.    The truth began to emerge on July 22, 2021, after the market closed, when Boston Beer announced second quarter 2021 financial results that fell below expectations and slashed its full year guidance due to softer-than-expected sales in the hard seltzer category and overall beer industry. Specifically, the Company issued a press release that stated, in relevant part:

- Based on current spending and investment plans, full-year 2021 Non-GAAP earnings per diluted share[], which excludes the impact of ASU 2016-09, is now estimated at between $18.00 and $22.00 a decrease from the previously reported estimate of between $22.00 and $26.00.

Jim Koch, Chairman and Founder of the Company, commented that "During the second quarter we saw significant growth in the On-Premise channel and re-opened all our retail locations as most COVID-19 restrictions have been lifted. However, ***our 24% depletions growth for the second quarter decelerated from our first quarter growth of 48% and was below our expectations, as the hard seltzer category and overall beer industry were softer than we had anticipated***. Hard seltzer category growth was negatively impacted by several developments: (1) slowing growth in household penetration as the market matures and there is less new trial, (2) a gradual transition of volume to the On-Premise channel as hard seltzer becomes a more regular option in that channel, (3) new hard seltzer brands

5

at retail that resulted in a proliferation of choices and consumer confusion, and (4) a challenging comparative period of significant pantry loading related to On-Premise restrictions in the second quarter of 2020. We are encouraged that four of our five major brands grew in the second quarter and we continue to expand our market share.  In measured Off-Premise channels in the first half of this year, where our brand portfolio represents 4% of the total beer industry volume, we've delivered over 45% of the industry volume growth, the highest of all brewers. . . ."

*     *     *

Mr. Burwick continued, "***We overestimated the growth of the hard seltzer category in the second quarter and the demand for Truly, which negatively impacted our volume and earnings for the quarter and our estimates for the remainder of the year***. We increased our production of Truly to meet our summer peak and have had lower than anticipated demand for certain Truly brand styles which has resulted in higher than planned inventory levels at our breweries and increased supply chain costs and complexity. At the same time, we have been experiencing out of stocks on certain of our can products, most significantly on our Twisted Tea brand family. We expect wholesaler inventories of Twisted Tea to remain tight for the rest of the summer. Our outlook for the hard seltzer category in the second half of 2021 is uncertain and we have planned our capacity and spending based upon several volume scenarios. We will continue to manage our capacity requirements through a combination of internal capacity increases and higher usage of third-party breweries. We continue to work hard on our comprehensive program to transform our supply chain with the goal of making our integrated supply chain more efficient, reduce costs, increase our flexibility to better react to mix changes, and allow us to scale up more efficiently. While we are in a very competitive business, we are confident in the continued growth of our current brand portfolio and innovations and we remain prepared to forsake short-term earnings as we invest to sustain long-term profitable growth."

23.     On this news, the Company's stock price fell $246.54, or 26%, to close at $701.00 per share on July 23, 2021, on unusually heavy trading volume.

24.     However, Boston Beer continued to issue misleading statements. Also on July 22, 2021, after the market closed, the Company held a conference call to discuss the financial results with analysts and investors. During the call, Defendant Burwick stated that the Company was "very confident" with the updated guidance:

*How can you guys have faith in your guidance now?* The category -- so, we're kind of out of the -- we're going to forecast the category business, that's not what we do well at. We grow brands, we grow businesses. So if you look at the third-party data providers that are out there and you guys all have worked with them, the

6

range for the full year is about 20% to 50%. Okay. So that's the range we're coming in at 20% to 50%. We believe -- *if it's at the low end of that range, if it is, we can continue to grow 2 or 3 times that rate. We've been doing it for a long time now and we feel very confident. If it goes to the high end of that range, we're probably have to be growing 2 or 3 times 50%, but we know we can grow faster than the category.* So, again, we think -- if you look at that range, low end, we grow significantly more, high end, we can grow more and we're going to grow share this year. So that is sort of how we're looking at it and that's how we kind of get to this number.

25.     Also during the call, analysts asked about the risk of inventory write-offs. Specifically, an analyst asked: "Your inventories were up pretty substantially, something in the order of $90 million sequentially. . . . And what's the risk of inventory obsolescence costs here?" Defendant Smalla replied that "from a weeks of supply forward-looking perspective, at this point, *we don't expect any write-off. So everything is reflected.*" He continued "Unless there is another significant slowdown, which we don't expect because our guidance has reflected and *that's why we increased the guidance a little bit also to the lower end to account for that.*"

26.     During the same call, an analyst asked about the Company's flexibility with its partners. Specifically, the analyst asked "But just coming back to the risk with all of this additional capacity that you're going to have access to, could you talk about what degree of flexibility that you have with your partners in other locations and your own breweries to just make sure that you don't have – that you're not too long on capacity or supply next year if the category growth disappoints?" Defendant Koch replied:

> Yeah. *We believe we have very flexible contracts with our primary partners.* There are shortfall fees, but they don't kick in for a -- for the first piece of volume. *We have to go way below our projections before they kick in and they are reasonable.* And because our contract partners are very good producers, they're in demand. They make lots of different things. We are the principal customer for most of them and looked at as the most desirable, stable, sizable volume. But if we cut some of that back, we've been told by our contract partners that they've got other demand for it. So we're lucky in that that flex capacity, the last third of it, we basically have options on that and the contracts were structured that way, because we were uncertain about just how high was up. So we locked in adequate capacity to cover very ambitious upside goals, but *the shortfall fees are not sizable.*

27.     The above statements identified in ¶¶ 22, 24-26 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that Boston Beer's hard seltzer sales were decelerating; (2) that, as a result, Boston Beer was reasonably likely to incur inventory write-offs; (3) that the Company was reasonably likely to incur shortfall fees payable to third party brewers; (4) that, as a result of the foregoing, Boston Beer's financial results would be adversely impacted; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

28.     On September 8, 2021, after the market closed, Boston Beer issued a press release announcing a financial guidance update. Specifically, the Company withdrew the 2021 financial guidance it had issued on July 22, 2021, citing decelerating sales of hard seltzer products. Boston Beer stated that it expects to incur write-offs of hard seltzer inventory, shortfall fees payable to third party brewers, and other costs. The Company's press release stated, in relevant part:

> Since The Boston Beer Company, Inc.'s (the "Company's") last guidance update for fiscal year 2021 financial performance, the market for hard seltzer products has continued to experience decelerating growth trends. Industry reports have estimated that the full year 2021 volume for the hard seltzer market retail sales will have over 100 million fewer cases than the volumes estimated in May 2021 and over 30 million fewer cases than the volumes estimated in July 2021.  *While demand for the Company's hard seltzer products continues to grow at faster than category rates in measured off-premise channels, we believe there will be continuing uncertainty about hard seltzer demand trends for the remainder of 2021.*
>
> *As a result of this uncertainty and its impact on our volume trends, the Company is withdrawing its 2021 financial guidance issued on July 22, 2021. Further, the Company now expects to incur hard seltzer-related inventory write-offs, shortfall fees payable to 3rd party brewers, and other costs that will be expensed during the remainder of fiscal 2021.*  As a result, the Company currently expects full year 2021 earnings per diluted share will fall below the previously-reported estimate of between $18.00 and $22.00, excluding the impact of ASU 2016-09.

The Company will continue to review its volume projections and the related impact on its business and full year financial results in light of evolving market conditions and will update its progress on its next scheduled earnings call scheduled for October 21, 2021.

29.     On this news, the Company's share price fell $21.09, or 3.7%, to close at $538.31 per share on September 9, 2021, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Boston Beer securities between April 22, 2021 and September 8, 2021, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

31.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Boston Beer's shares actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Boston Beer shares were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Boston Beer or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

32.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

33.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

34.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Boston Beer; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

35.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

36.     The market for Boston Beer's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Boston Beer's securities traded at artificially inflated prices during the Class

Period.  Plaintiff and other members of the Class purchased or otherwise acquired Boston Beer's securities relying upon the integrity of the market price of the Company's securities and market information relating to Boston Beer, and have been damaged thereby.

37.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Boston Beer's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Boston Beer's business, operations, and prospects as alleged herein.

38.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Boston Beer's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

39.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

40.     During the Class Period, Plaintiff and the Class purchased Boston Beer's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

41.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Boston Beer, their control over, and/or receipt and/or modification of Boston Beer's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Boston Beer, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

42.     The market for Boston Beer's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Boston Beer's securities traded at artificially inflated prices during the Class Period. On April 23, 2021, the Company's share price closed at a Class Period high of $1,283.90 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities

relying upon the integrity of the market price of Boston Beer's securities and market information relating to Boston Beer, and have been damaged thereby.

43.     During the Class Period, the artificial inflation of Boston Beer's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Boston Beer's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Boston Beer and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

44.     At all relevant times, the market for Boston Beer's securities was an efficient market for the following reasons, among others:

(a)     Boston Beer shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Boston Beer filed periodic public reports with the SEC and/or the NYSE;

(c)     Boston Beer regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Boston Beer was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

45.     As a result of the foregoing, the market for Boston Beer's securities promptly digested current information regarding Boston Beer from all publicly available sources and reflected such information in Boston Beer's share price. Under these circumstances, all purchasers of Boston Beer's securities during the Class Period suffered similar injury through their purchase of Boston Beer's securities at artificially inflated prices and a presumption of reliance applies.

46.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

47.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be

characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Boston Beer who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

48.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

49.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Boston Beer's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

50.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to

maintain artificially high market prices for Boston Beer's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

51.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Boston Beer's financial well-being and prospects, as specified herein.

52.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Boston Beer's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Boston Beer and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

53.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the

other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

54.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Boston Beer's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

55.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Boston Beer's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by

Defendants during the Class Period, Plaintiff and the other members of the Class acquired Boston

Beer's securities during the Class Period at artificially high prices and were damaged thereby.

56.     At the time of said misrepresentations and/or omissions, Plaintiff and other

members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff

and the other members of the Class and the marketplace known the truth regarding the problems

that Boston Beer was experiencing, which were not disclosed by Defendants, Plaintiff and other

members of the Class would not have purchased or otherwise acquired their Boston Beer securities,

or, if they had acquired such securities during the Class Period, they would not have done so at the

artificially inflated prices which they paid.

57.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act

and Rule 10b-5 promulgated thereunder.

58.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the

other members of the Class suffered damages in connection with their respective purchases and

sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

59.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully

set forth herein.

60.     Individual Defendants acted as controlling persons of Boston Beer within the

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level

positions and their ownership and contractual rights, participation in, and/or awareness of the

Company's operations and intimate knowledge of the false financial statements filed by the

Company with the SEC and disseminated to the investing public, Individual Defendants had the

power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

62.     As set forth above, Boston Beer and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in

this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: September 14, 2021                By:    _s/ Gregory B. Linkh_____
                                         **GLANCY PRONGAY & MURRAY LLP**
                                         Gregory B. Linkh (GL-0477)
                                         230 Park Ave., Suite 358
                                         New York, NY 10169
                                         Telephone: (212) 682-5340
                                         Facsimile: (212) 884-0988
                                         glinkh@glancylaw.com

                                         Robert V. Prongay
                                         Charles H. Linehan
                                         Pavithra Rajesh
                                         1925 Century Park East, Suite 2100
                                         Los Angeles, CA 90067
                                         Telephone: (310) 201-9150
                                         Facsimile: (310) 201-9160

                                         **THE LAW OFFICES OF FRANK R. CRUZ**
                                         Frank R. Cruz
                                         1999 Avenue of the Stars, Suite 1100
                                         Los Angeles, CA 90067
                                         Telephone: (310) 914-5007

                                         *Attorneys for Plaintiff Joseph Siegel*

**SWORN CERTIFICATION OF PLAINTIFF**

**THE BOSTON BEER COMPANY, INC. SECURITIES LITIGATION**

I, Joseph Siegel, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase The Boston Beer Company, Inc. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in The Boston Beer Company, Inc. securities during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

9/9/2021
_____                    _____
Date                                                              Joseph Siegel

**Joseph Siegal's Transactions in The Boston Beer Company, Inc. (SAM)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 5/18/2021 | Bought | 3 | $1,063.0000 |
| 7/6/2021 | Bought | 1 | $927.8500 |
| 8/20/2021 | Bought | 1 | $588.0600 |