USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/14/21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
JOSEPH SIEGEL, individually and on behalf of :
all others similarly situated, :
: 
: 
Plaintiff, : 21-CV-7693 (VSB)
: 
- against - : 
: 
: 
: 
THE BOSTON BEER COMPANY, INC., : 
DAVID A. BURWICK, FRANK H. SMALLA, : 
and C. JAMES KOCH, : 
: 
: 
Defendants. : 
: 
: 
------------------------------------------------------------X
: 
: 
MARK HUBER, individually and on behalf of : 
all others similarly situated, : 
: 
: 21-CV-8338 (VSB)
Plaintiff, : 
: **OPINION & ORDER**
- against - : 
: 
: 
: 
THE BOSTON BEER COMPANY, INC., : 
DAVID A. BURWICK, FRANK H. SMALLA, : 
and C. JAMES KOCH, : 
: 
: 
Defendants. : 
: 
------------------------------------------------------------X

Appearances:

Gregory Bradley Linkh
Glancy Prongay & Murray LLP
New York, NY
*Counsel for Plaintiff Joseph Siegel, Movant Solomon Rosenthal*

Joseph Alexander Hood, II, Jeremy Alan Lieberman
Pomerantz LLP
New York, NY
*Counsel for Plaintiff Mark Huber, Movant Ramsin Daniels*

William Bernard Federman
Federman & Sherwood
Oklahoma City, OK
*Counsel for Movant Ira Sved*

Adam M. Apton
Levi & Korsinsky, LLP
New York, NY
*Counsel for Movants Daniel Goldsmith, Susan Rasmussen, Robert O. Smith, Vasantha Vemula, Mark Hanson*

Hannah Elizabeth Ross
Bernstein Litowitz Berger & Grossmann LLP
New York, NY
*Counsel for Movant City of Miami Fire Fighters and Police Officers Retirement Trust*

Kim Elaine Miller
Kahn Swick & Foti, LLC
New York, NY
*Counsel for Movant Ayhan Hassan*

Justin Solomon Nematzadeh
Nematzadeh PLLC
New York, NY
*Counsel for Movants Ruby Laney, Ron Arnold*

James Milligan Wilson, Jr.
Faruqi & Faruqi, LLP
New York, NY
*Counsel for Movant Juan Cortes*

Thomas Livezey Laughlin, IV
Scott + Scott, LLP
New York, NY
*Counsel for Movant Scott Conrad*

Laurence Jesse Hasson
Bernstein Liebhard, LLP
New York, NY
*Counsel for Movants Rajan Desai, Nisha Desai, Chad Aman*

Richard Arthur McGuirk
Nixon Peabody LLP
Rochester, NY
*Counsel for Defendants The Boston Beer Company, Inc., David A. Burwick, Frank H. Smalla, C. James Koch*

George James Skelly, Morgan Caissie Nighan
Nixon Peabody LLP
Boston, MA
*Counsel for Defendants The Boston Beer Company, Inc., David A. Burwick, Frank H. Smalla, C. James Koch*

<u>VERNON S. BRODERICK</u>, United States District Judge:

Plaintiffs bring two securities fraud class action lawsuits against The Boston Beer Company, Inc. ("Boston Beer") and several of its officers and directors. These actions (collectively, the "Boston Beer Actions") allege that Boston Beer and its officers and directors violated Sections 10(b) and 20(a) of the Securities Exchange Act ("Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), as well as the U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated pursuant to the Exchange Act. (Siegel Compl. ¶ 9; Huber Compl. ¶ 9.)[1]

Before me are motions from ten movants seeking (1) consolidation of the actions, (2) appointment of lead plaintiff, and (3) approval of lead counsel. Because the Boston Beer Actions set forth substantially identical questions of law and fact, movants' motions to consolidate are GRANTED. Because movant Ayhan Hassan has a large financial interest in the litigation and appears to fulfill the threshold adequacy requirements of Federal Rule of Civil Procedure 23, Hassan's motion to be appointed lead plaintiff and for approval of his selection of lead counsel is GRANTED. The remaining movants' motions for appointment as lead plaintiff and for approval of lead counsel are DENIED.

---

[1] "Siegel Compl." refers to Plaintiff Joseph Siegel's complaint filed September 14, 2021 in case 21-CV-7693, (Doc. 1), and "Huber Compl." refers to Plaintiff Mark Huber's complaint filed October 8, 2021 in case 21-CV-8338, (Doc. 1).

I.     **Factual and Procedural History**[2]

    A.     *The Complaints*

On September 14, 2021, Plaintiff Joseph Siegel ("Siegel") filed a class action complaint (the "Siegel Complaint" or "Siegel Action") against Boston Beer, as well as its Chief Executive Officer David A. Burwick, Chief Financial Officer Frank H. Smalla, and founder and Chairman of the Board of Directors C. James Koch (collectively, "Individual Defendants"), alleging that Boston Beer and Individual Defendants (collectively, "Defendants") violated Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 by misleading investors about Boston Beer's hard seltzer sales. (Siegel Complaint ¶¶ 2–7, 13–18.) The gravamen of Siegel's lawsuit is that, between April 22, 2021 and September 8, 2021 (the "Class Period"), Defendants failed to disclose to investors that Boston Beer's hard seltzer sales were decelerating. (*Id.* ¶¶ 20–29.) Siegel claims that as a result of Defendant's allegedly misleading statements and alleged omissions, Boston Beer stocks "traded at artificially inflated prices," (*id.* ¶ 36), causing investors to suffer losses "when the truth was revealed" at the end of the Class Period, (*id.* ¶ 38).

The same day that he filed his complaint, Siegel published a notice of the complaint on Business Wire in accordance with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 77z-1(a)(3)(A)(i). (*E.g.*, Siegel Action Doc. 30-3, "First Miller Decl. Exh. C.") The notice advised investors who "purchased or otherwise acquired Boston Beer securities" between April 22, 2021 and September 8, 2021 that they had 60 days from the date of the notice to ask the Court to be appointed as lead plaintiff of the litigation. (*Id.*)

---

[2] The facts in Section I are recited for background only, and are not intended to and should not be viewed as findings of fact.

4

Less than a month later, on October 8, 2021, Plaintiff Mark Huber filed a class action complaint (the "Huber Complaint" or "Huber Action") against Defendants. (Huber Compl. ¶¶ 13–18.) The Huber Complaint is virtually identical to the Siegel Complaint. (*Compare* Siegel Compl. ¶¶ 1–62 *with* Huber Compl. ¶¶ 1–62.)

### B.  *Consolidation and Lead Plaintiff Motions*

In the Siegel Action, ten plaintiffs or groups of plaintiffs have filed motions requesting consolidation of the Boston Beer Actions, appointment of lead plaintiff, and approval of lead counsel. (Siegel Action Docs. 14, 18, 21, 24, 27, 32, 35, 39, 40, 46.) In the Huber Action, two plaintiffs or groups of plaintiffs have filed such motions; however, these motions are essentially identical to motions filed by movants in the Siegel Action. (*Compare* Huber Action Docs. 18 & 21 *with* Siegel Action Docs. 32 & 39.) Before me are the following motions:

1. Ramsin Daniels moves to consolidate the Boston Beer Actions, to appoint himself as lead plaintiff, and for approval of Pomerantz LLP as lead counsel. (Siegel Action Doc. 14.);

2. Ira Sved moves to consolidate the Boston Beer Actions, to appoint himself as lead plaintiff, and for approval of Federman & Sherwood as lead counsel. (Siegel Action Doc. 18.);

3. Daniel Goldsmith, Susan Rasmussen, Robert O. Smith, Vasantha Vemula, and Mark Hanson (together, the "SAM Investor Group") move to consolidate the Boston Beer Actions, to appoint themselves as lead plaintiff, and for approval of Levi & Korsinsky, LLP as lead counsel. (Siegel Action Doc. 21.);

4. City of Miami Fire Fighters' and Police Officers' Retirement Trust ("Miami F&P") moves to consolidate the Boston Beer Actions, to appoint itself as lead

plaintiff, and for approval of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as lead counsel. (Siegel Action Doc. 24.);

5. Ayhan Hassan moves to consolidate the Boston Beer Actions, to appoint himself as lead plaintiff, and for approval of Kahn Swick & Foti, LLC as lead counsel. (Siegel Action Doc. 27.);

6. Ruby Laney and Ron Arnold (together, "Laney-Arnold") move to consolidate the Boston Beer Actions, to appoint themselves jointly as lead plaintiff, and for approval of Berger Montague PC as lead counsel and Nematzadeh PLLC as local counsel. (Siegel Action Doc. 32, Huber Action Doc. 18.);

7. Solomon Rosenthal moves to consolidate the Boston Beer Actions, to appoint himself as lead plaintiff, and for approval of Glancy Prongay & Murray LLP as lead counsel. (Siegel Action Doc. 35.);

8. Juan Cortes moves to consolidate the Boston Beer Actions, to appoint himself as lead plaintiff, and for approval of Faruqi & Faruqi, LLP as lead counsel. (Siegel Action Doc. 39, Huber Action Doc. 21.);

9. Steven Conrad moves to consolidate the Boston Beer Actions, to appoint himself as lead plaintiff, and for approval of Scott+Scott Attorneys at Law LLP as lead counsel. (Siegel Action Doc. 40.); and

10. Rajan Desai, Nisha Desai, and Chad Aman (together, "Desai-Aman Group") move to consolidate the Boston Beer Actions, to appoint themselves jointly as lead plaintiff, and for approval of Bernstein Liebhard LLP as lead counsel. (Siegel Action Doc. 46.)

In response to the above-mentioned motions, Daniels, Laney-Arnold, Sved, Conrad,

Miami F&P, SAM Investor Group, and Rosenthal each filed notices of non-opposition acknowledging that they do not possess the largest financial interest. (Siegel Action Docs. 50, 51, 52, 53, 54, 55, 56; Huber Action Doc. 25.) On November 29, 2021, Hassan, Desai-Aman Group, and Cortes each filed an opposition to competing motions. (Siegel Action Doc. 57, "Hassan's Opp."; Siegel Action Doc. 59, "Desai-Aman Group's Opp."; Siegel Action Doc. 60, Huber Action Doc. 26, "Cortes's Opp.") On December 6, 2021, Desai-Aman Group, Cortes, and Hassan each filed a reply. (Siegel Action Doc. 62, "Desai-Aman Group's Reply"; Siegel Action Doc. 63, Huber Action Doc. 28, "Cortes's Reply"; Siegel Action Doc. 65, "Hassan's Reply.") Defendants have not taken a position on the merits of these motions.

## II. Discussion

### A. *Consolidation*

#### 1. Applicable Law

Consolidation is a "valuable and important tool of judicial administration." *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1006 (2d Cir. 1995), *vacated on other grounds*, 518 U.S. 1031 (1996). Under Federal Rule of Civil Procedure 42(a), when separate actions before a court involve a common question of law or fact, a court is empowered to "consolidate the actions." Fed. R. Civ. P. 42(a)(2). Essentially, Rule 42 is "invoked to expedite trial and eliminate unnecessary repetition and confusion." *Devlin v. Transp. Commc'n Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999) (internal quotation marks omitted). It is well-settled that Rule 42 gives a district court broad discretion to consolidate legal actions sua sponte. *Id.* Indeed, where judicial economy is concerned, a district court will generally consolidate actions. *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990) ("[C]ourts have taken the view that considerations of judicial economy favor consolidation."); *Bank of Montreal v. Eagle Assocs.*,

7

117 F.R.D. 530, 532 (S.D.N.Y. 1987) ("Considerations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event." (quoting *Ikerd v. Lapworth*, 435 F.2d 197, 204 (7th Cir. 1970))).

### 2. Application

The Huber Complaint appears to be copied-and-pasted from the Siegel Complaint. (*Compare* Siegel Compl. ¶¶ 1–62 *with* Huber Compl. ¶¶ 1–62.) The Huber Action and Siegel Action involve substantially similar—indeed, identical—questions of law and fact. The ten motions requesting consolidation of the Boston Beer Actions, (Siegel Action Docs. 14, 18, 21, 24, 27, 32, 35, 39, 40, 46; Huber Action Docs. 18 & 21), are unopposed. I find that consolidation is warranted, and movants' motions for consolidation are GRANTED.

### B. *Appointment of Lead Plaintiff*

#### 1. Applicable Law

The procedures set forth in the PSLRA, 15 U.S.C. § 78u-4, govern the appointment of lead plaintiff in securities class actions. The PSLRA was enacted with the goal of "prevent[ing] lawyer-driven litigation" and "ensur[ing] that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel." *Peters v. Jinkosolar Holding Co.*, No. 11 Civ. 7133(JPO), 2012 WL 946875, at *4 (S.D.N.Y. Mar. 19, 2012) (internal citation omitted); *see also* H.R. Rep. No. 104-369, at 32–33H.R. Rep. No. 104-369, at 32–33 (1995) (Conf. Rep.), *as reprinted in* 1995 U.S.C.C.A.N. 730, 731–32; *In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 43–44 (S.D.N.Y. 1998). Before its enactment, "professional plaintiffs" overwhelmingly and disproportionately profited, "irrespective of the culpability of the defendants" and "at the expense of shareholders with larger stakes." *Schulman v. Lumenis, Ltd.*,

No. 02 Civ. 1989 (DAB), 2003 WL 21415287, at *2 (S.D.N.Y. June 18, 2003) (quoting *In re Party City Sec. Litig.*, 189 F.R.D. 91, 103 (D.N.J. 1999)).

Consistent with this intent, under the PSLRA, courts are to appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). There is a rebuttable presumption that the appropriate plaintiff is the person or group of persons that (1) filed the original complaint or filed a motion in response to the notice, (2) has the largest financial interest in the relief being requested, and (3) meets the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Id.* § 78u-4(a)(3)(B)(iii)(I). Other class members may rebut this presumption by providing evidence that the presumptively adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

As an initial matter, the PSLRA requires that the plaintiff in the first-filed action publish a notice of the pendency of the action in a "widely circulated national business-oriented publication or wire service." *Id.* § 78u-4(a)(3)(A)(i). The notice must inform the purported plaintiff class of the pendency of the action, the claims and purported class period, and the ability to move, within sixty days of the notice, to serve as lead plaintiff of the purported class. *Id.*

a. Groups of Unrelated Investors

While the PSLRA permits a "person or group of persons" to be appointed as lead plaintiff, 15 U.S.C. § 78u-4(a)(3)(b)(iii)(I), it does not define "group of persons" or whether these persons must be related, *see In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005) ("The PSLRA does not, unfortunately, define what constitutes an appropriate candidate. . . . [T]he Act does not specify whether the 'members' must be related in some fashion in order to

9

qualify as an appropriate lead plaintiff group."). Courts permit unrelated investors to move for appointment as lead plaintiff, and aggregate their financial interests, on a case-by-case basis. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008); *eSpeed*, 232 F.R.D. at 99. Groups with unrelated members must, however, provide evidence that they will function cohesively and thus best serve the class. *Varghese*, 589 F. Supp. 2d at 392; *see also In re Tarragon Corp. Sec. Litig.*, No. 07 CIV 7972(PKC), 2007 WL 4302732, at *2 (S.D.N.Y. Dec. 6, 2007) ("[T]o enjoy the rebuttable presumption that the statute confers, there must be some evidence that the members of the group will act collectively and separately from their lawyers."). Courts have considered factors such as "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *See Varghese*, 589 F. Supp. 2d at 392. Courts will reject a group of unrelated investors if the group "has not provided sufficient evidence that it will function cohesively, and has only provided 'conclusory assurances' that call into question whether it can manage th[e] litigation effectively." *Micholle v. Ophthotech Corp.*, No. 17-CV-1758 (VSB), 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (quoting *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191–92 (S.D.N.Y. 2011)). Where a court rejects a group of unrelated investors, it may consider the largest shareholder within the group for appointment as lead plaintiff. *Varghese*, 589 F. Supp. 2d at 394 ("While the Court rejects the aggregated [plaintiff group's] motion as lead plaintiffs, the Court may consider . . . the largest shareholder . . . individually, as if he had moved to be appointed as lead plaintiff alone.").

b. <u>Rule 23</u>

The lead plaintiff must also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 states:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The Rule 23 analysis in the context of appointment of lead plaintiff "need not be as complete as would a similar determination for the purpose of a class certification." *eSpeed*, 232 F.R.D. at 102. The parties moving for lead plaintiff are only required to make a prima facie showing that they meet the Rule 23 prerequisites, and courts need only consider the typicality and adequacy requirements. *Varghese*, 589 F. Supp. 2d at 397; *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007); *eSpeed*, 232 F.R.D. at 102.

With respect to typicality, courts consider whether the claims of the proposed lead plaintiff "arise from the same conduct from which the other class members' claims and injuries arise." *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (quoting *In re Crayfish Co. Sec. Litig.*, No. 00 Civ.6766IDAB), 2002 WL 1268013, at *5 (S.D.N.Y. June 6, 2002)); *see also Oxford Health Plans*, 182 F.R.D. at 50. While the claim need not be identical, it must be substantially similar to the other members' claims. *See Canson v. WebMD Health Corp.*, No. 11 Civ. 5382(JFK), 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011).

The adequacy requirement is satisfied where the proposed lead plaintiff "fairly and adequately protect[s] the interests of the class." Fed. R. Civ. P. 23(a)(4). "In evaluating adequacy, courts have assessed factors such as: (1) the size, available resources and experience of the proposed lead plaintiff, (2) the qualifications of the proposed class counsel; and (3) any

11

potential conflicts or antagonisms rising among purported class members." *Blackmoss Investments, Inc. v. ACA Cap. Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008) (citations omitted); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 417 (S.D.N.Y. 2004) ("While the size, available resources or even experience of a candidate are not dispositive factors in appointing a lead plaintiff, they are nonetheless relevant to reaching a determination as to whether a candidate will be capable of adequately protecting the interests of the class.").

### 2. Application

All movants timely filed for appointment as lead plaintiff. On September 14, 2021, Siegel published a notice of the complaint on Business Wire in accordance with the PSLRA, 15 U.S.C. § 77z-1(a)(3)(A)(i). (*E.g.*, First Miller Decl. Exh. C.) All lead plaintiff motions were filed by November 15, 2021 and therefore were timely.[3] (Siegel Action Docs. 14, 18, 21, 24, 27, 32, 35, 39, 40, 46; Huber Action Docs. 18 & 21.)

Daniels, Laney-Arnold, Sved, Conrad, Miami F&P, SAM Investor Group, and Rosenthal have all filed notices of non-opposition acknowledging that they do not possess the largest financial interest. (Siegel Action Docs. 50, 51, 52, 53, 54, 55, 56; Huber Action Doc. 25.) Cortes, Desai-Aman Group, and Hassan each maintain that they are the presumptive lead plaintiff. (*See generally* Cortes's Opp.; Desai-Aman Group's Opp.; Hassan's Opp; Cortes's Reply; Desai-Aman Group's Reply; Hassan's Reply.) At first glance, Cortes alleges the largest loss, of $869,620.65. (Siegel Action Doc. 43-2, Huber Action Docs. 23-2, "First Wilson Decl. Exh. B"; *see also* Cortes's Opp. 7.) Desai-Aman Group alleges the second-largest total loss, of

---

[3] Although sixty days from September 14, 2021 was November 13, 2021, this date fell on a Saturday, and thus, under Federal Rule of Civil Procedure 6, the motions were due on November 15, 2021. Fed. R. Civ. P. 6(a)(1)(C).

$826,708.55. (Siegel Action Doc. 47-4, "Hasson Decl. Exh. C.") Hassan alleges the third-largest loss, of $734,946.54. (Siegel Action Doc. 30-2, "First Miller Decl. Exh. B.")

### a. Groups of Unrelated Investors

Desai-Aman Group's claims require more scrutiny, precisely because Desai-Aman Group is a group. *See Varghese*, 589 F. Supp. 2d at 392 (S.D.N.Y. 2008) ("[A] proposed group must proffer an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs."). Desai-Aman Group is composed of three plaintiffs: Rajan and Nisha Desai, a married couple from New Jersey; and Chad Aman, a resident of Georgia. (Siegel Action Doc. 47-5 ¶¶ 3, 9, "Hasson Decl. Exh. D.") Desai-Aman Group alleges that each of the plaintiffs has at least 20 years of investing experience, and the Desais previously served as lead plaintiffs in a different class action litigation. (*See id.* ¶¶ 4, 5, 6, 9.) Aman and the Desais did not know each other prior to this litigation, but were introduced by their counsel, Bernstein Liebhard LLP, whom they "independently contacted and retained." (*See id.* ¶ 11.) If appointed lead plaintiff, Desai-Aman Group has agreed to "actively manage the prosecution of the Action including reviewing documents, having joint calls, discussing significant developments, and participating in discovery." (*Id.* ¶ 14.) Aman and the Desais have exchanged contact information in anticipation of future joint calls. (*Id.*) Desai-Aman Group claims that it "negotiated a fee structure lower than that Bernstein Liebhard initially offered." (*Id.* ¶ 16.) Aman and the Desais have agreed that, in the event of disputes about litigation decisions, the Desais would defer to Aman, since he has the larger financial interest. (*Id.* ¶ 17.)

To determine whether Desai-Aman Group can function cohesively and thus best serve the class, I consider factors such as "(1) the existence of a pre-litigation relationship between group

13

members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *See Varghese*, 589 F. Supp. 2d at 392. On one hand, Aman and the Desais appear to be sophisticated investors, and they have offered suggestions about how they would manage the litigation. However, I am concerned about the lack of any pre-litigation relationship between the group members, and their counsel's pivotal role in forming the group. Although Desai-Aman Group repeatedly argued that the group's negotiated fee structure was an "added indicia of adequacy," (*see* Desai-Aman Group's Opp. 3 & 7; Desai-Aman Group's Reply 2, 6–7, 8), the Group's declaration failed to allege who negotiated the fee structure, when, and how, and whether the negotiation actually involved any joint effort among the recently-introduced plaintiffs, (*see* Hasson Decl. Exh. D ¶ 16).[4] Indeed, although Aman and the Desais appear to have communicated in some form at least once—to agree to jointly move for appointment as lead counsel and to exchange contact information—they do not allege any other prior communication, only plans for future communication. (*See generally id.*) If not for intervention by counsel, the Desais and Aman never would have met, much less worked together. Therefore, I am unpersuaded that Desai-Aman Group will be able to "act collectively and separately from their lawyers." *Varghese*, 589 F. Supp. 2d at 393; *see also Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 534 (S.D.N.Y. 2015) (finding "no matter how experienced or sophisticated these plaintiffs may be," the group of unrelated plaintiffs "appears to be nothing more than a lawyer-created group of unrelated investors who were cobbled together in the hope of thereby becoming the biggest loser for PSLRA purposes" (internal

---

[4] Moreover, to the extent that Desai-Aman Group suggests that the negotiated fee structure demonstrates the Desais and Aman can cooperate among themselves, this evidence is of limited value, since each party may have an interest in a lower fee structure, including counsel.

14

quotation marks omitted)). Because Desai-Aman Group "has not provided sufficient evidence that it will function cohesively, and has only provided conclusory assurances that call into question whether it can manage th[e] litigation effectively," I find Desai-Aman Group is not a proper plaintiff group. *Micholle*, 2018 WL 1307285, at *9 (internal quotation marks omitted).

While I deny Desai-Aman Group's motion to be appointed lead plaintiff, I still separately consider the Desais' and Aman's motions to be appointed lead plaintiff. *See Varghese*, 589 F. Supp. 2d at 394. I note that Rajan and Nisha Desai are technically a "group" themselves. However, because they are a married couple, I find that they "will be able to act collectively and separately from their lawyers, and are properly considered a plaintiff group." *Micholle*, 2018 WL 1307285, at *8 (internal quotation marks omitted). The Desais allege a $330,911.47 loss, and Aman alleges a $495,797.08 loss. (Hasson Decl. Exh. C.) Therefore, the Desais and Aman individually allege smaller losses than Cortes (loss of $869,620.65) and Hassan (loss of $734,946.54). I find that this takes them out of consideration for lead plaintiff.

b. Otherwise Satisfying Rule 23

Although Cortes alleges the largest financial loss, he still must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Cortes did not include a supporting declaration with his motion filed November 15, 2021. (*See generally* Doc. 43, "First Wilson Decl."). After Cortes filed his motion, Hassan's counsel contacted Cortes's counsel seeking more information about Cortes. (*See* Hassan's Opp. 4; Cortes's Opp. 10; *see also* Siegel Action Doc. 58, "Second Miller Decl." (attaching correspondence between counsel).) Consequently, in Cortes's opposition filed November 29, 2021, Cortes alleged that he was "a resident of Suffolk County, New York, was a small business owner, owning and operating a pizzeria in Mastic Beach, New York for nearly a decade and his

15

background and experiences were described in an article when he sold his business recently." (Cortes's Opp. 10.) As evidence, Cortes filed a copy of an article published on greaterlongisland.com on August 8, 2019 headlined, "Pizza Box taken over by previous owner, to be relaunched as Aliyana's Pizzeria." (Siegel Action Doc. 61-1, "Second Wilson Decl. Exh. A.") The article said that the "new owner" of Pizza Box Brick Oven Pizzeria—Cortes—had previously "owned the same location for seven years when it was Valentina Brick Oven Pizzeria and Restaurant." (*Id.*) The article also quoted Cortes as saying that he planned to sell the operation again soon. (*Id.*) On December 6, 2021, Cortes also filed a declaration with his reply. (Siegel Action Doc. 64-1, "Third Wilson Decl. Exh. A.") Cortes said in his declaration that, in addition to his experience running a small business for "nearly a decade," he had "been investing in the stock market for approximately two years." (*Id.* ¶¶ 4, 5.)

Opposing movants have raised more questions about Cortes. First, Hassan noted that while Cortes said that he "sold his business recently," the attached article instead said Cortes had recently purchased the business. (Hassan's Reply 3.) Hassan argued this discrepancy suggests that Cortes did not review the opposition and is not actively involved in the litigation. (*Id.*) More importantly, Hassan alleged that public records research demonstrated that Cortes "owns two properties valued at less than $220,000, has declared personal bankruptcy, and has a long history of liens and default judgments levied against him." (*Id.* at 4 (citing Siegel Action Docs. 66-3, 66-4, 66-5, 66-6, Third Miller Decl. Exhs. C, D, E, F).) Cortes did not disclose this financial history at any point in the litigation. Hassan intimated that given Cortes's financial background, his claimed losses of $869,620.65 are implausible. (*Id.*)[5]

---

[5] Desai-Aman Group further alleged that Cortes "failed to submit a basic loss chart with his motion and he improperly included twenty-nine pre-class period Boston Beer transactions on his certification." (Desai-Aman's Opp. 2.) In his reply, Cortes explained that he provided pre-Class Period stock trade data "for transparency and to

As a threshold matter, by not providing an initial declaration with his motion, Cortes failed "to make a preliminary showing of adequacy under Rule 23." *Karp v. Diebold Nixdorf, Inc.*, 2019 U.S. Dist. LEXIS 188670, at *16 (S.D.N.Y. Oct. 30, 2019); *see also In re HEXO Corp. Sec. Litig.*, 2020 U.S. Dist. LEXIS 166312, at *4 (S.D.N.Y. Sep. 11, 2020) ("[A]mple case law supports what one would have thought is an uncontroversial point—namely, that even a preliminary showing of adequacy requires a threshold amount of information regarding an individual movant's background and sophistication."). Even when Cortes belatedly provided a declaration, that declaration did not demonstrate that Cortes would be able to adequately represent the class of investors, as Cortes only claimed to have two years of investing experience. (Third Wilson Decl. Exh. A ¶ 5.) *See also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust.*, 229 F.R.D. at 417 (finding the "experience" of a proposed lead plaintiff is "relevant to reaching a determination as to whether a candidate will be capable of adequately protecting the interests of the class"). If those were not sufficient reasons to find Cortes inadequate, Hassan rightfully raised the concern that appointing a lead plaintiff with unverified losses that turn out to be inaccurate "can result in the class losing representation at a critical stage of the case." (Hassan's Reply 4 (citing *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 138 (S.D.N.Y. 2007)). For all of the foregoing reasons, I find that Cortes has not demonstrated that he can "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

With Cortes no longer in contention to be lead plaintiff, the movant with the greatest alleged loss is Hassan. He claims to have lost $734,946.54 as a result of Defendants' actions

---

provide competing movants the ability to calculate first-in-first-out ('FIFO') losses if desired," and that opposing movants could do "basic math" to calculate Cortes's losses. (Cortes's Reply 3–4, 8.) Cortes did not make clear in his motion or opposition that he was providing information about pre-Class Period transactions for transparency's sake. But since Desai-Aman Group ultimately agrees with Cortes that his total loss is $869,620, (*compare* Desai-Aman Group's Opp. 5 *with* Cortes's Reply 2), and Hassan has raised other dispositive issues with Cortes's adequacy, I need not decide whether Cortes's certification was improper.

17

during the Class Period. (*See* First Miller Decl. Exh. B.) Hassan's claims and injuries "arise from the same conduct from which the other class members' claims and injuries arise," satisfying the Rule 23 typicality requirement. *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. at 121. Hassan also has over 35 years of investing experience. (Siegel Action Doc. 30-4 ¶ 3, "First Miller Decl. Exh. D.") This information about Hassan's background and experience, which was included with Hassan's original motion, suggests that unlike Cortes, Hassan could "fairly and adequately protect the interests of the class," thus satisfying the Rule 23 adequacy requirement. Fed. R. Civ. P. 23(a)(4).

As a final consideration, Desai-Aman Group argued that Hassan's motion should be denied as inadequate because he listed incorrect dates for four transactions. (Desai-Aman Group's Reply 8 n.7, 10; Desai-Aman Group's Opp. 5 n.3.) Hassan listed four purchase dates as July 21, 2020 when he meant July 21, 2021; Hassan's loss calculation was unaffected by these apparent typographical errors. (Hassan's Reply 7.) I am not troubled by the errors. "The goal of the PSLRA was not to select individuals for lead plaintiff who make no mistakes—rather it was to promote a client-driven rather than lawyer-driven process." *Reitan v. China Mobile Games & Entm't Grp., Ltd*, 68 F. Supp. 3d 390, 399 (S.D.N.Y. 2014). I find Hassan is the presumptive lead plaintiff, and that no competing movants have overcome that presumption. Therefore, his motion to be appointed lead plaintiff is GRANTED.

### C. *Appointment of Lead Counsel*

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). There is a "strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection." *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 278 (S.D.N.Y. 2015)

18

(citation omitted).

Hassan has selected Kahn Swick & Foti, LLC. I have reviewed Hassan's filings in this case, as well as Miller's Declaration and Kahn Swick & Foti, LLC's resume attached as Exhibit E. (*See* Doc. 30-5, "First Miller Decl. Exh. E.") I find that Kahn Swick & Foti, LLC has deep experience in securities litigation and is capable of adequately and effectively representing the class. Hassan's motion that Kahn Swick & Foti, LLC be appointed lead counsel of the Boston Beer Action is GRANTED.

### III. Conclusion

The motions for consolidation are GRANTED based on the similarity of the Boston Beer Actions. Because I find that Hassan is the presumptive lead plaintiff and no other movants have rebutted that presumption, Hassan's motion for appointment as lead plaintiff and for approval of lead counsel is GRANTED. Hassan has a substantial financial interest and meets the typicality and adequacy requirements of Rule 23. The remaining motions from Desai-Aman Group, Cortes, Daniels, Laney-Arnold, Sved, Conrad, Miami F&P, SAM Investor Group, and Rosenthal for appointment as lead plaintiff are DENIED.

The Clerk of Court is respectfully requested to terminate the pending motions. (Docs. 14, 18, 21, 24, 27, 32, 35, 39, 40, 46.) Hassan is directed to file an amended consolidated complaint no later than thirty (30) days after the date of issuance of this Opinion & Order. Defendants are directed to answer or otherwise respond to the amended consolidated complaint no later than thirty (30) days after Hassan serves the amended consolidated complaint.

SO ORDERED.

Dated: December 14, 2021
      New York, New York

*Vernon Broderick* (signature)

Vernon S. Broderick
United States District Judge