# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH SIEGEL, Individually and On Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>    v.<br><br>THE BOSTON BEER COMPANY, INC., DAVID A. BURWICK, FRANK H. SMALLA, and C. JAMES KOCH,<br><br>      Defendants. | Case No. 1:21-cv-07693 (VSB) (JW) |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS THE AMENDED COMPLAINT

| | |
|---|---|
| George J. Skelly<br>Morgan C. Nighan<br>Richard A. McGuirk<br>Nixon Peabody LLP<br>Exchange Place<br>53 State Street<br>Boston, MA 02109<br>- and -<br>1300 Clinton Square<br>Rochester, NY 14604<br><br>*Attorneys for Defendant*<br>*The Boston Beer Company, Inc.* | James R. Carroll<br>Kurt Wm. Hemr<br>Alexander C. Drylewski<br>Skadden, Arps, Slate,<br> Meagher & Flom LLP<br>One Manhattan West<br>New York, NY 10001<br>- and -<br>500 Boylston Street<br>Boston, MA 02116<br><br>*Attorneys for Defendants*<br>*David A. Burwick, Frank H. Smalla,*<br>*and C. James Koch* |

Dated: April 29, 2022

4860-8471-4014.1

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................. ii

I.    PLAINTIFF'S OBJECTIONS TO DEFENDANTS' USE OF CERTAIN DOCUMENTS ARE NOT WELL TAKEN. ........................................................................ 1

II.   PLAINTIFF'S OPPOSITION DOES NOTHING TO RESCUE HIS FAILURE TO PLEAD ACTIONABLE MISREPRESENTATIONS OR OMISSIONS. ..................... 3

     A.    Plaintiff Concedes Many Important Points Made In Defendants' Brief ................. 3

     B.    Plaintiff Does Not Distinguish This Case From Other "Fraud By Hindsight" Cases. .................................................................................................. 5

     C.    Plaintiff's New Claim That Defendants' April 2021 Statements Omitted To Disclose An Expected Moderation Is Not Pleaded In The Complaint And Should Be Ignored. ............................................................................................... 7

     D.    Almost All The Challenged Statements Are Forward Looking And Thus Protected By The Safe Harbor. ................................................................................ 8

     E.    Corporate Optimism Or Opinions Are Not Actionable. ......................................... 9

III.  PLAINTIFF HAS NOT SUFFICIENTLY PLEADED SCIENTER. ................................. 10

     A.    Plaintiff Fails To Plead "Conscious Misbehavior Or Recklessness" ................... 10

     B.    Plaintiff Fails To Plead "Unusual" Insider Trading ............................................. 12

IV.  PLAINTIFF OFFERS NO REASON TO BELIEVE HE CAN CURE BY AMENDING. ....................................................................................................................... 15

4860-8471-4014.1

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*In re Aceto Corp. Sec. Litig.*,
   No. 18-CV-2425, 2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019) ..............................................6

*Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
   28 F.4th 343 (2d Cir. 2022) ..........................................................................................1, 2, 15

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007).....................................................................................................1

*In re Avon Prod., Inc. Sec. Litig.*,
   No. 05-CV-6803, 2009 WL 848017 (S.D.N.Y. Feb. 23, 2009)...............................................9

*In re Doral Fin. Corp. Sec. Litig.*,
   No. 05-MD-1706, 563 F. Supp. 2d 461 (S.D.N.Y. 2008).....................................................10

*Bldg. Trades Pension Fund of W. Pa. v. Insperity, Inc.*,
   No. 20-CV-5635, 2022 WL 784017 (S.D.N.Y. Mar. 15, 2022) ..................................... 4, 5, 7

*Born v. Quad/Graphics, Inc.*,
   521 F. Supp. 3d 469 (S.D.N.Y. 2021) ................................................................................ 3,7

*City of Coral Springs Police Officers' Ret. Plan v. Farfetch Ltd.*,
   No. 19-CV-8720, 2021 WL 4481119 (S.D.N.Y. Sept. 30, 2021)....................................14, 15

*City of Providence v. Aeropostale, Inc.*,
   No. 11-CV-7132, 2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013) ..........................................13

*City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*,
   412 F. Supp. 3d 206 (E.D.N.Y. 2019) ..................................................................................15

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
   477 F. Supp. 3d 123 (S.D.N.Y. 2020) ..................................................................................10

*Colbert v. Rio Tinto PLC*,
   824 F. App'x 5 (2d Cir. 2020) .............................................................................................4, 7

*In re Dynagas LNG Partners LP Sec. Litig.*,
   504 F. Supp. 3d 289 (S.D.N.Y. 2020) ....................................................................................8

*In re Ferrellgas Partners, L.P., Sec. Litig.*,
   No. 16-CV-7840, 2018 WL 2081859 (S.D.N.Y. Mar. 30, 2018) ..........................................15

4860-8471-4014.1

*Fries v. N. Oil & Gas, Inc.*,
   285 F. Supp. 3d 706 (S.D.N.Y. 2018)..................................................................................13

*Gissin v. Endres*,
   739 F. Supp. 2d 488 (S.D.N.Y. 2010)....................................................................................9

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014)....................................................................................15

*New Orleans Emples. Ret. Sys. v. Celestica, Inc.*,
   455 F. App'x 10 (2d Cir. 2011) .............................................................................................9

*In re Nielsen Holdings PLC Sec. Litig.*,
   510 F. Supp. 3d 217 (S.D.N.Y. 2021)..................................................................................10

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)...................................................................................................9

*In re Salix Pharm, Ltd.*,
   No. 14-CV-8925, 2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016) .................................... 9, 10

*In re Scholastic Corp. Sec. Litig.*,
   252 F.3d 63 (2d Cir. 2001)...................................................................................................13

*Shemian v. Rsch. in Motion Ltd.*,
   No. 11-CV-4068, 2013 WL 1285779 (S.D.N.Y. Mar. 29, 2013) ..........................................8

*Singh v. Cigna Corp.*,
   277 F. Supp. 3d 291 (D. Conn. 2017)..................................................................................14

*In re Hain Celestial Grp. Inc. Sec. Litig.*,
   No. 16-CV-04581, 2019 WL 1429560 (E.D.N.Y. Mar. 29, 2019).........................................14

*In re Veon Ltd. Sec. Litig.*,
   No. 15-CV-08672, 2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018).........................................11

*In re Weight Watchers Int'l Inc. Sec. Litig.*,
   504 F. Supp. 3d 224 (S.D.N.Y. 2020)..................................................................................14

**Federal Statutes**

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, *et seq.* ...................... *passim*

4860-8471-4014.1

After a first quarter of astronomical growth in the hard seltzer category in 2021, Boston Beer anticipated "something of a slowdown" in growth but "not falling off a cliff." Compl. ¶ 96. When growth fell further than expected, Boston Beer properly adjusted its full-year forecasts. *Id.* ¶ 62. To recast that sequence of events as a securities fraud claim would demand an extraordinary degree of clairvoyance and would be contrary to the case law and the PSLRA.

### I. PLAINTIFF'S OBJECTIONS TO DEFENDANTS' USE OF CERTAIN DOCUMENTS ARE NOT WELL TAKEN.

Plaintiff objects only to Defendants' use of certain documents that he asserts are not relied upon in the Complaint. Opp. 8-9. None of his objections has merit:

***Evercore's April 23, 2021 Report*** (Decl.[1] Ex. Q) is cited in the Complaint[2] for market share calculations on which Plaintiff relies to argue that Mr. Burwick's statement that the company was "going to plate [*sic*] the entire year to grow share" was fraudulent. Compl. ¶¶ 55, 56. That report is integral to the Complaint and may be considered on this Motion for its truth. *See Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 n.3 (2d Cir. 2022).

***The SEC filings referred to in Plaintiff's footnote 3***, Opp. 8 n.3, may also be considered by the Court on this Motion. It is well settled in securities fraud cases that a court may consider public-record SEC filings such as 10-Ks and Form 4s on a motion to dismiss. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

As to ***Decl. Exs. N, T, X, and Y***, Plaintiff's only objection, Opp. 8 n.3, is that they are being offered for their truth, but they are not:

The *July 23, 2021 Evercore Report (Decl. Ex. X)* is offered to show that market analysts

---

[1] "Decl." refers to the Declaration of Richard A. McGuirk (Dkt. 79).
[2] Plaintiff asserts this Evercore report is not cited in the Complaint, Opp. 8 n.3, but it is the only report known to Defendants that includes the data through April 22, 2021, that is cited at Compl. ¶ 56. If that is not the report Plaintiff had in mind, he could readily have identified the correct one. If Plaintiff cannot identify his source, the allegations should be disregarded as conclusory.

1

with access to the same third-party market data made contemporaneous predictions similar to the company's. Here, notwithstanding some deceleration in year-over-year growth of hard seltzer in 2Q2021 due to 2Q2020 pantry-loading, analysts (just like Defendants) predicted reacceleration in the summer: "[W]e see upside potential as growth should accelerate as summer progresses as comps get easier, they lap significant out-of-stocks, large outdoor events return, revenge partying continues, and students going back to college." Decl. Ex. X at 2; *see also* Defs.' Br. 3-4, 16-19, 38. More generally, where any analyst report presents a prediction — *e.g.*, 70% seltzer category growth, reacceleration, a summer peak, or Truly benefiting from a shakeout among competitors — it is not offered for its truth (the future is inherently unknowable) but rather to show that such a prediction was independently made. That undermines any claim that Defendants' similar predictions were false when made, or were made with scienter. *See, e.g.*, Defs.' Br. 8-24, 36-39; *see also* Decl. Exs. B, P, Q, R, S, V, W & X. The Second Circuit recently blessed precisely that use of analyst reports in *Bristol-Myers*, where they showed that market analysts "<u>predicted</u> Bristol-Myers's use of a 5% threshold." 28 F.4th at 352 n.3 (emphasis added).

*The April 23 and May 25, 2021 Evercore Reports and July 23, 2021 Morgan Stanley Report (Decl. Exs. Q, T, and Y)* are offered to show that analysts characterized market conditions similarly to the company's characterizations, not for their truth. For example, analysts characterized the July category slowdown as "faster than we originally expected." Decl. Ex. Y at 2; *see also* Defs.' Br. 4 n.6 (citing App. B, Decl. Exs. V, BB & Y). Again, this is exactly like *Bristol-Myers*, where analyst reports were properly considered to show that it was not fraudulent to characterize a 5% protein level as being "strongly" expressed.

Plaintiff criticizes Mr. Burwick's statement that Truly was "growing in the high double digits." Compl. ¶¶ 104, 173. The *June 23, 2021 Beer Business Daily Newsletter (Decl. Ex. N)*

shows that the market was aware of a 59% year-to-date growth figure that *Beer Business Daily* had reported "[y]esterday," and Mr. Burwick was referring to that. It is not offered for the accuracy of that particular figure. Defs.' Br. 22-23; *see also infra* at 11.

In addition, the analyst reports may be considered not for their truth, but because they preclude an inference that the statements were misleading when made and illustrate a more compelling inference undermining scienter than that proffered by Plaintiff based on his conclusory allegations. *See* Defs.' Br. 1 n.2, 9 (citing *Born v. Quad/Graphics, Inc.*, 521 F. Supp. 3d 469, 485 (S.D.N.Y. 2021)), 38.

Finally, the reports are offered to show that the market believed or understood certain market conditions that were important background and context to the challenged statements. *See Born*, 521 F. Supp. 3d at 486 (market awareness that company was acquiring a competitor). The reports demonstrate that the market understood background conditions such as COVID-related pantry-loading, noted difficult comparison periods, and expected a summer peak and reacceleration in the positive growth rate of hard seltzer. *See, e.g.*, Decl. Exs. Q, T, X & Y.[3]

## II. PLAINTIFF'S OPPOSITION DOES NOTHING TO RESCUE HIS FAILURE TO PLEAD ACTIONABLE MISREPRESENTATIONS OR OMISSIONS.

The Complaint attempts to meet the PSLRA's strict, particularized pleading requirements only as to Statements 1-11. Defs.' Br. 7. Plaintiff asserts in a footnote, Opp. 9 n.4, that the Court might also consider the numerous block-quoted statements in Complaint ¶¶ 107-132, but does not identify which of them are purportedly false and misleading or why they are false.

### A. Plaintiff Concedes Many Important Points Made In Defendants' Brief.

Plaintiff's Opposition concedes numerous important points, including the following:

---

[3] The point for which Defendants cited Decl. Ex. J, Defs.' Br. 14, is independently sufficiently supported by reference to Decl. Ex. Z, and Plaintiff does not object to consideration of that document.

3

Regarding Mr. Burwick's July 22, 2021 earnings call remark that the seltzer category "went from high double digit growth rate to low double digit growth rate," Compl. ¶ 104, Plaintiff does not refute and thus concedes Defendants' demonstrations that the remark: (a) refers to a comparison period for the most recent 13 weeks, not for year-to-date; and (b) refers to the seltzer category, not Truly (the word "Truly" is interpolated in his split-quotations). Defs.' Br. 23. This remark cannot be an "admission" that the earlier June 24 statement (Stmt. 11B, ¶ 103) regarding Truly and based on a year-to-date figure was false when made. Importantly, many of Plaintiff's arguments regarding hindsight and scienter, *see* Opp. 2-3, 12-15, 26-28, are premised on his untenable assertion that this remark constitutes an "admission."

Plaintiff also now concedes there was a "moderation" in the positive growth rate in March-April and later. Opp. 16. Indeed, Mr. Smalla expressly referred to a "moderation" in his earnings call statement (quoted in Defs.' Br. 18). Expecting such a moderation (due to comparisons with high baseline points from prior year's pantry-loading bumps) is not at all inconsistent with still expecting a "summer peak" or "re-acceleration," (*id.* at 4, 5, 16, 38), as even the analysts continued to do. *See, e.g.*, Decl. Exs. Q & X. Accordingly, Mr. Smalla's statement is not an "admission," does not imply that any other statements were false when made, and does not support scienter.

Plaintiff further concedes that Mr. Koch's statement that Truly had been gaining share "for like a year and a half" (Stmt. 10, ¶ 98) was "literally true." Opp. 17. As an "'accurate statement[] about past performance,'" that is not an allegation of fraud. *Bldg. Trades Pension Fund of W. Pa. v. Insperity, Inc.*, No. 20-CV-5635, 2022 WL 784017, at *9 (S.D.N.Y. Mar. 15, 2022) (internal citation omitted). Nor could it have been materially misleading to a market that had the analyst reports providing the underlying historical data (*viz.*: quarterly percentages 22, 21, 24, 24, 27, and 29 (last four weeks), Defs.' Br. 25; App. B; Decl. Ex. U, Chart 7, p. 3). *See Colbert v. Rio Tinto*

*PLC*, 824 F. App'x 5, 10 n.5 (2d Cir. 2020) (analyst report showed market was aware of key fact).

Plaintiff also expressly concedes or does not challenge numerous other points Defendants established, including: (a) there was no decline in sales for the category or for Truly, as the market well knew, but continued growth, Defs.' Br. 13-15, undermining Plaintiff's challenges to Statements 2 (¶ 75), 3 (¶ 79), 4 (¶ 81), 5 (¶ 83), 7 (¶ 89), and 9 (¶ 96); (b) Mr. McBrien's own remarks completely refute conclusory allegations that challenges regarding return to on-premise rendered forecasts unachievable (Defs.' Br. 10-12; undermining Stmts. 1 (¶ 72), 2 (¶ 75), 4 (¶ 81), 7 (¶ 89) 9 (¶ 96), and ¶¶ 74, 76, and 90); (c) Plaintiff's supposed zero-growth percentage in ¶ 99 is based on an apples-to-oranges fallacy of comparing a short-term recent-period metric to a very different full-year metric (Defs.' Br. 24-25) (discussing Stmt. 10A (¶ 98) and ¶ 99); (d) several allegations are counsel's argumentative paraphrase rather than actual statements by CW1 and should be disregarded, Defs.' Br. 7, 19, 21; (e) "channel stuffing" was merely used as a pejorative characterization, Defs.' Br. 21 n.16; (f) that Plaintiff does challenge any reported financial data (*e.g.*, that Truly outgrew the seltzer category for 13 consecutive months, undermining ¶ 120), Defs.' Br. 2 n.3; and (g) Plaintiff does not object to the data compilation in App. C (data which was known to the market), undermining ¶ 77's conclusory allegation that Truly sales in Q2 "would be unlikely to mirror, much less exceed, sales in Q1:21."

**B.** **Plaintiff Does Not Distinguish This Case From Other "Fraud By Hindsight" Cases.**

Not only does Plaintiff contend that forecasts made on particular dates were fraudulent because things turned out differently, but often the subsequent "event" to which Plaintiff points was itself an adjusted forecast. Plaintiff offers no reason to believe that because Boston Beer adjusted its full-year forecasts in light of new data, it must have known at the time it made a prior forecast that the forecast would not prove accurate. A series of adjusted forecasts cannot make out a claim of fraud. *See Insperity*, 2022 WL 784017, at *8 (no 10b-5 claim stated where company

"transparently adjusted its growth targets downward each quarter it failed to hit its target metrics").

Plaintiff identifies three points he claims demonstrate that his case is not based on hindsight, all of which were rebutted. *First*, a Spring deceleration in the positive growth rate is not inconsistent with expecting a reacceleration. Defs.' Br. 14; *supra* at 3.

*Second*, Plaintiff seeks to construe two statements as admissions that Defendants knew year-long forecasts could not be achieved, but neither statement establishes any such thing. Mr. Smalla's July statement that the Company expected a "moderation" in the positive growth rate of seltzer in May-June as the year cycled the pantry-loading bumps provides no basis to believe that the company's full-year forecasts could not be achieved. Defs.' Br. 18-19. Plaintiff also argues that Mr. Burwick "admitted" that it was in at least "June and July 2021 when the category started to decelerate rapidly." Opp. 7 (emphasis added). But Plaintiff ignores that Mr. Burwick clearly said it "started" in June and July, and, of course, no one knew what the shape of the growth curve would be until after the fact, in hindsight. *See* Defs.' Br. 22-23; *see also* Decl. Ex. G (7/22/21 earnings call, p. 9) (Mr. Smalla: "the slowdown of the category came pretty suddenly").[4] The same is true for his description of a moderation that "started to happen around Memorial Day." Compl. ¶ 125.

*Third*, the strikingly vague allegation that Mr. Koch "stymied" certain "initiatives" (whatever they were) in some unspecified manner, *id.* ¶ 35, does nothing to make this into a case alleging misleading statements of present fact.

Plaintiff's arguments from certain analyst reactions to adjusted forecasts are unavailing. If anything, the analysts express surprise at the results, not shock at having been "misled." Opp. 20

---

[4] Plaintiff's attempt to distinguish *In re Aceto Corp.*, No. 18-CV-2425, 2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019), fails because here, the market was aware of the potential "headwinds," as the Complaint acknowledges, Compl. ¶ 5, and CW2's vague criticisms about forecasting capabilities were not alleged to have been discussed with any of the Defendants. *Id.* ¶ 35; *see* Defs.' Br. 21-22, 37-38.

("Guggenheim calls Boston Beer's Q2:21 results 'surprisingly disappointing'"). But "even if the analyst had been 'shocked,' it would be insufficient to demonstrate that the challenged statements . . . were false or misleading[.]" *Insperity*, 2022 WL 784017, at *11 n.6. In any event, neither the analysts nor Plaintiff specifically identify any misleading statement, instead referencing "tone," Opp. 3, which does not satisfy the strict pleading requirements of the PSLRA and Rule 9(b).

C. **Plaintiff's New Claim That Defendants' April 2021 Statements Omitted To Disclose An Expected Moderation Is Not Pleaded In The Complaint And Should Be Ignored.**

Plaintiff now asserts for the first time that a failure to disclose in April that moderation was expected in May and June is a material omission. Opp. 27. The Complaint does not allege that claim and it should be disregarded. Nor could Plaintiff sufficiently plead that claim:

*First*, it was well known to the market that there would likely be a temporary moderation in year-over-year growth because of the comparison to the pantry-loading in 2020. Defs.' Br. 3-4, 16-18, 38; Compl. ¶ 110. Further, 1Q2021's growth over the prior year had been exceptional, *id.* ¶ 43, and Plaintiff alleges no reason to think anyone expected that astronomical growth would continue indefinitely. Defendants had no duty to disclose something the market already knew. *Born*, 521 F. Supp. 3d at 486; *Colbert*, 824 F. App'x at 10.

*Second*, the company did disclose it in the April 22, 2021 earnings call. Mr. Burwick references "lapping out of stocks," *i.e.,* expected growth rates were based on comparison to a prior-year period where sales were so high that distributors did not have enough stock to meet demand. Decl. Ex. E (4/22/2021 earnings call p. 7); *see also* Decl. Ex. P (Guggenheim Report 4/22/21 p. 1) (describing "the dreaded stock-outs that plagued the industry last year"). That is why the forecast for the category was revised down from 70-100% to 60-90% for the full year, as discussed on the April earnings call. Decl. Ex. E (4/22/2021 earnings call p. 7).

*Third*, Plaintiff challenges statements of full-year forecasts. Making full-year forecasts did

7

not oblige Defendants to further predict month-to-month or quarter-to-quarter variations, or require them to disclose that seltzer sales growth may expect a temporary moderation due to 'lapping out of stocks.' *See Shemian v. Rsch. in Motion Ltd.*, No. 11-CV-4068, 2013 WL 1285779, at *20 (S.D.N.Y. Mar. 29, 2013) ("[A] company is not required to disclose every fact that 'a reasonable investor would very much like to know.'"), *aff'd*, 570 F. App'x 32 (2d Cir. 2014).

### D. Almost All The Challenged Statements Are Forward Looking And Thus Protected By The Safe Harbor.

Plaintiff concedes that seven of Statements 1-11 are forward-looking. Opp. 18, 19. In addition, Statements 2 (¶ 75) and 5 (¶ 83) are also obviously regarding future expectations. Statement 7A (¶ 89) discusses "seeing a lot of growth," which is forward-looking in the context of an earnings call that forecasted 60-90% growth for the year. Statement 8 (¶ 91) discusses inventory levels being sufficient "to support the forecasted growth . . . over the summer," *i.e.*, in the future.

Because Plaintiff does not challenge the accuracy of historical performance data, the backward-looking component of any statement is not at issue. The remaining statements (*i.e.*, other than Statements 1-11) should be disregarded. *See supra* at 4-5. In any event, the statements in Complaint ¶¶ 117, 120, and 122 are obviously forward-looking. And the statement regarding the "S-Curve" in ¶ 118 (not ¶ 117) refers back to an earlier time from which standpoint a future downturn would be forward-looking, as the statement itself says: "that would be looking forwards."

Defendants established that the Complaint nowhere alleges <u>actual knowledge</u> of falsity of the forward-looking statements. Defs.' Br. 29. The Opposition says nothing to refute that. That ends the inquiry, irrespective of whether there were any cautionary statements.

Plaintiff argues that cautionary language is ineffective if an identified risk has already transpired. Opp. 19. But, as in *In re Dynagas LNG Partners LP Sec. Litig.*, 504 F. Supp. 3d 289,

320 (S.D.N.Y. 2020), the Complaint "does not establish facts that the overall risk had transpired," and Plaintiff has failed to plead facts to establish that management's forecasts were "unachievable when made."[5] That (as was well known) the market for hard seltzer was experiencing to a degree some effects from the large number of competitors, a reopening of on-premise, and a moderation in growth compared to the COVID bumps, does not establish that those factors had already materialized to a degree that anybody expected a collapse. *See, e.g.*, Decl. Ex. X (Evercore Report 7/23/21) (predicting reacceleration). Thus, the cautionary language (identifying risk factors, Defs.' Br. 27-29) was still quite meaningful. *See, e.g.*, *Gissin v. Endres*, 739 F. Supp. 2d 488, 511 (S.D.N.Y. 2010) (liquidity "risks were adequately acknowledged and had not yet materialized to the extent that they would fraudulently undermine any positive predictions").

Contrary to Plaintiff's assertion, cautionary statements in written documents apply to oral statements such as interviews given by executives. *See* Stmts. 9 (¶ 96), 10B (¶ 98), and 11A (¶ 103); Defs.' Br. 28; *see also In re Avon Prod., Inc. Sec. Litig.*, No. 05-CV-6803, 2009 WL 848017, at *18 (S.D.N.Y. Feb. 23, 2009) (cautionary language in "8-Ks, press releases and conference calls throughout the relevant period" sufficient to "immunize" oral statements under the PSLRA safe harbor). The cases Plaintiff cites purporting to contradict this view, Opp. 20, merely recite the PSLRA standard, and do not address oral interview statements.

### E.  Corporate Optimism Or Opinions Are Not Actionable.

Plaintiff does not argue that Defendants misidentified any statements as corporate optimism. Opp. 20; Defs.' Br. 30-31 & n.21. Instead, Plaintiff argues that corporate optimism is still actionable if an investor could rely on the statements, and Plaintiff asserts that certain analysts

---

[5] Cases cited by Plaintiff are inapt. *See* Opp. 19; *New Orleans Emples. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 15 (2d Cir. 2011) (statements about present inventory, not future forecasts); *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (affirming application of PSLRA safe harbor and dismissal of complaint);

9

did rely on the statements. As demonstrated above, the analysts were reacting to the adjusted forecasts, and do not identify any particular statements, but rather "tone." *Supra* at 6-7. *In re Salix Pharm, Ltd.*, No. 14-CV-8925, 2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016), is inapposite. *Salix* was a channel-stuffing case where executives misrepresented facts about present inventory levels in response to analyst questions during earnings calls. *Id.* at *10. Here, Plaintiff does not challenge any of the historical financial or performance data as inaccurate.

Regarding statements of opinion, Plaintiff only disputes that Statements 7 (¶ 89) and 11 (¶ 103) are opinion. But "actively selling," "making a lot of progress," being "confident in Truly's ability to grow," and Truly's growth being in the "high" double digits, are obviously opinions. Plaintiff further argues that opinions omitted purported facts about the Company's "flawed and outdated forecasting system[.]" Opp. 22-23. But, as discussed below and in Defs.' Br. 21-22, Plaintiff's conclusory assertions about CW2, Compl. ¶ 35, do not support this point. And the Company is not required to negatively characterize itself. *See* Defs.' Br. 26. Finally, Defendants have already provided the context to explain why Mr. Smalla's statement about expecting a moderation in May and June does not show that Defendants could not believe their opinions. Defs.' Br. 17-19.

### III. PLAINTIFF HAS NOT SUFFICIENTLY PLEADED SCIENTER.

**A.** <u>**Plaintiff Fails To Plead "Conscious Misbehavior Or Recklessness."**</u>

Defendants demonstrated that Plaintiff failed to plead facts to show "conscious misbehavior or recklessness" on the part of any Defendant, and that the far more likely and compelling inference to be drawn is that Defendants believed their forecasts and statements at the time they were made.[6] Defs.' Br. 36-39. The Opposition does nothing to dispel those points.

---

[6] The PSLRA requires the court to evaluate possible alternative inferences that are properly supported. *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc*., 477 F. Supp. 3d 123, 137 (S.D.N.Y. 2020) (Rakoff, J.) does not

Plaintiff's scienter argument is based primarily upon purported "admissions," Opp. 26-28, that Defendants have demonstrated not to be admissions. Defs.' Br. 17-19, 22-23, 38; *see also supra* at 4. Regarding the June 24 statement by Mr. Burwick that Truly was "growing in the high double digits," as demonstrated above, *supra* at 2-3, and Defs.' Br. 22-23, the context makes clear that statement was referring to a 59% year-to-date figure that the market was aware of and had been reported "[y]esterday." Indeed, the challenged Statement 11 (¶ 103) also refers to Truly's growth "YTD." Importantly, Plaintiff does not allege (or argue) that the year-to-date growth figure for Truly, whatever it may have been, was not in the "high double digits," nor could he do so in good faith. His conclusory assertion that Truly was "not growing in the high double digits" does not purport to address year-to-date growth. Compl. ¶¶ 104, 173.

Plaintiff also argues the timing of a statement by Mr. Smalla regarding inventory write-offs suggests scienter. Opp. 2, 7, 11 n.5, 27-28 (quoting Compl. ¶ 121). First, that statement is not one of the Statements 1-11 and does not meet the PSLRA pleading standard. Second, Mr. Smalla did not just say "we don't expect any write-off, so everything is reflected," but instead went on to explain, "unless there is another significant slowdown, which we don't expect." Compl. ¶ 121. Plaintiff does not plead particular facts (*e.g.*, hypothetically, some internal report) demonstrating that "another significant slowdown" was expected as of July 22, 2021. Indeed, Defendants and analysts were expecting a reacceleration in the summer. Defs.' Br. 3-4, 16-19, 38. In any event, the statement in ¶ 121 is not actionable for all the reasons indicated in Defendants' chart. *See* App. A, Item D.

As to Mr. Smalla specifically, none of the challenged Statements 1-11 are attributed to him.

---

hold otherwise, as Plaintiff seems to suggest. Opp. 27. There, unlike this case (*see supra* at 1-5), defendants provided no cognizable basis for finding that a competing inference was more compelling, apart from their own say-so in a brief and press release. *Cf. In re Doral Fin. Corp. Sec. Litig.*, 05-MD-1706, 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008) (Rakoff, J.) (dismissing under PSLRA due to more compelling inference), *aff'd,* 344 F. App'x 717 (2d Cir. 2009).

The mere fact that he signed a SOX certificate is not a basis from which scienter can be inferred. *See In re Veon Ltd. Sec. Litig.*, No. 15-CV-08672, 2018 WL 4168958, at *18 (S.D.N.Y. Aug. 30, 2018) (no scienter based on SOX certificate where plaintiff failed to plead that signer knew statements were misleading). The only relevant SEC filing that contains a SOX certificate is the 1Q2021 10-Q. From that, Plaintiff only challenges Statement 8 (¶ 91), but he does not actually challenge that Statement as written. *See* Defs.' Br. 20 (discussing Compl. ¶ 91).

Plaintiff's additional arguments regarding purported conscious misbehavior or recklessness do not hold water. Specifically:

- Plaintiff argues that Defendants knew in April about the same factors they cited when they lowered their guidance in July. Opp. 28. But Plaintiff alleges no specific facts to support his assumption that such factors had already materialized to such a degree that the full-year growth forecasts could not be met. *See In re Nielsen Holdings PLC Sec. Litig.*, 510 F. Supp. 3d 217, 230-32 (S.D.N.Y. 2021) (Plaintiffs failed to "point to particular facts or data suggesting that Defendants did not believe that they would see 1.5% to 3.5% growth in revenue in 2016 despite the trend.") (emphasis in original).

- Plaintiff alleges vaguely that CW2 claims that he "made the case to senior management," that "improvements to the [forecasting] system were necessary," without identifying with whom he spoke, and certainly not identifying any of the Individual Defendants. Compl. ¶ 35. Plaintiff does nothing to tie these allegations to Mr. Koch (*e.g.*, alleging that CW2 actually spoke to him) but instead conclusorily alleges that Mr. Koch "stymied" these "initiatives," without explaining how, or what the initiatives would have entailed. *Id.*

- Plaintiff's argument that the pervasively confounding factor of the pandemic should be disregarded because it had been going on for a year is specious.

In short, Defendants have demonstrated from materials that the Court may properly consider that the more compelling inference to be drawn is that Defendants, just like the analysts, expected further growth when they made their year-long forecasts. *See* Defs.' Br. 15-19, 37-38.

### B.   **Plaintiff Fails To Plead "Unusual" Insider Trading.**

Plaintiff's Opposition offers no basis to dispute the following facts:

(i)   Mr. Koch's disposition of 100,000 shares during the Class Period pursuant to 10b5-1 plans was consistent with his long-term practice of disposing of a similar magnitude of shares each year, and amounted to just 4% of his holdings.

12

>  (ii)   Other than a net withholding of 7,898 shares to satisfy tax obligations associated with the vesting of restricted stock, Mr. Burwick's only transaction during the Class Period was a sale of 907 shares pursuant to a 10b5-1 plan that amounted to just 1.8% of his holdings.

Those utterly ordinary transactions provide no basis to make a strong inference of scienter.

None of the four factors cited by Plaintiff from *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 74-75 (2d Cir. 2001), Opp. 32, is present here:

***First***, the amounts realized on the transactions are not unusual when placed in context. *Mr. Koch* is the chair and founder of Boston Beer and maintains substantial holdings. In light of his holdings, Plaintiff's suggestion that the Court can informatively evaluate that figure by comparing it solely to the $437,000 salary Mr. Koch was paid in 2021, Opp. 33, is not well taken. Moreover, an annual disposition of $100 million in stock was consistent with his recent practice. *See* App. D. *Mr. Burwick's* disposition of approximately $1.1 million in stock (his single transaction apart from tax withholding) was not unusual given that (i) his total compensation for 2021 was nearly $5 million and (ii) he was awarded almost $15 million in restricted stock three years earlier. *See* 2021 Proxy Statement at 39-40, 44 (*available at* https://bit.ly/3vr3yBa). Plaintiff does not rebut the precedent establishing that withholdings undertaken solely to satisfy tax obligations are not indicia of fraud. *Fries v. N. Oil & Gas, Inc.*, 285 F. Supp. 3d 706, 720 n.5 (S.D.N.Y. 2018). The cases he cites at Opp. 32-33 are distinguishable because those cases do not appear to have solely involved tax-withholding transactions and *City of Providence v. Aeropostale, Inc.*, No. 11-CV-7132, 2013 WL 1197755, at *16 (S.D.N.Y. Mar. 25, 2013), did not involve allegations of insider trading as a basis for scienter.

***Second***, the portion of each individual's holdings sold was small. Plaintiff's argument with respect to *Mr. Koch* proceeds from an absurd assertion that his Class B founder shares "have no economic value," Opp. 36, because he must convert them to Class A shares to be sold. Judge

13

Nathan recently rejected a similar "maneuver" by a shareholder plaintiff as "an untenable proposition." *City of Coral Springs Police Officers' Ret. Plan v. Farfetch Ltd.*, 19-cv-8720, 2021 WL 4481119, at *5 n.2 (S.D.N.Y. Sept. 30, 2021). From that premise, Plaintiff reaches the impossible conclusion that Mr. Koch sold 167% of his holdings — *i.e.*, more shares than he owned — during the Class Period.[7] Plaintiff does not dispute that when Mr. Koch's Class B shares are included, his Class Period dispositions amount to just 4% of his holdings.

With respect to *Mr. Burwick*, approximately ninety percent of the figure Plaintiff calculates (*i.e.*, 90% of Plaintiff's 17.49%) for his Class Period disposition of shares is based on the tax-withholding transaction that (as noted above) does not suggest fraud. Plaintiff does not dispute that when that transaction is removed from the calculation, the figure is just 1.8%.

***Third***, Plaintiff essentially demands that the Court limit its review to a purposely selected and artificially narrow time window. He relies on carefully chosen cases using shorter time periods to defend his Control Period, Opp. 35-36, but many cases use longer periods. *See, e.g.*, *In re Hain Celestial Grp. Inc. Sec. Litig.*, No. 16-CV-04581, 2019 WL 1429560, at *10 (E.D.N.Y. Mar. 29, 2019) (39-month window); *Singh v. Cigna Corp.*, 277 F. Supp. 3d 291, 306 n.9 (D. Conn. 2017), *aff'd,* 918 F.3d 57 (2d Cir. 2019) (approximately 2 years). In any event, the Court need not look back five years: Mr. Koch disposed of similar fractions of his substantial holdings in 2020. *See* App. D. As for Mr. Burwick, even if the Court's analysis is limited to the period Plaintiff proposes, his sales during the Class Period aside from the withholding transaction (907 shares) are not dissimilar from his sales during the proposed Control Period (264 shares).

***Fourth***, no pattern of trading by multiple insiders is alleged here. Plaintiff makes no allegation regarding trading by any insider other than Mr. Koch or Mr. Burwick.

---

[7] *In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224 (S.D.N.Y. 2020), cited at Opp. 36, is easily distinguishable because it involved stock options that were not mentioned in the operative complaint, unlike the Class B shares at issue here. *See* Compl. ¶ 152.

**Lastly**, Plaintiff argues that the trading was suspiciously timed, asserting that use of 10b5-1 plans "assisted Koch and Burwick in perpetrating their fraud." Opp. 37. But, as in *Coral Springs*, 2021 WL 4481119, at *6, Plaintiff has not alleged facts that make it plausible that those individuals actually knew that a price drop was coming <u>when those plans were adopted</u>. Having failed to plead such facts, scienter cannot be inferred. *See Bristol-Myers*, 28 F.4th at 356 n.4; *City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*, 412 F. Supp. 3d 206, 226-27 (E.D.N.Y. 2019); *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 585 (S.D.N.Y. 2014), *aff'd,* 604 F. App'x 62 (2d Cir. 2015).

## IV. PLAINTIFF OFFERS NO REASON TO BELIEVE HE CAN CURE BY AMENDING.

Plaintiff's request for leave to amend should be denied: he does not suggest how he could cure his pleading deficiencies by amending further, and indeed he cannot do so. *See, e.g.*, *In re Ferrellgas Partners, L.P., Sec. Litig.*, No. 16-CV-7840, 2018 WL 2081859, at *20 (S.D.N.Y. Mar. 30, 2018), *aff'd*, 764 F. App'x 127 (2d Cir. 2019) (summary order).

Respectfully submitted,

By: */s/ George J. Skelly*
George J. Skelly (*pro hac vice*)
Morgan C. Nighan
Richard A. McGuirk
Nixon Peabody LLP
Exchange Place
53 State Street
Boston, MA 02109
- and -
1300 Clinton Square
Rochester, NY 14604
(617) 345-1000
(617) 345-1300 (Fax)
gskelly@nixonpeabody.com
mnighan@nixonpeabody.com
rmcguirk@nixonpeabody.com

*Attorneys for Defendant*
*The Boston Beer Company, Inc.*

By: */s/ James R. Carroll*
James R. Carroll (*pro hac vice*)
Kurt Wm. Hemr
Alexander C. Drylewski
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, NY 10001
- and -
500 Boylston Street
Boston, MA 02116
(617) 573-4800
(617) 573-4822 (Fax)
james.carroll@skadden.com
kurt.hemr@skadden.com
alexander.drylewski@skadden.com

*Attorneys for Defendants David A. Burwick,*
*Frank H. Smalla, and C. James Koch*