UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
JOSPEH SIEGEL, individually and on     :
behalf of all others similarly         :
situated,                              :
                                       :        21cv7693 (DLC)
                      Plaintiff,       :
                                       :        OPINION AND ORDER
              -v-                      :
                                       :
THE BOSTON BEER COMPANY, INC., DAVID   :
A. BURWICK, FRANK H. SMALLA, and C.    :
JAMES KOCH,                            :
                                       :
                      Defendants.      :
                                       :
-------------------------------------- X


APPEARANCES:

For the plaintiff:
Kahn Swick & Foti, LLC
Kim E. Miller
Lewis S. Kahn
250 Park Avenue, 7th Floor
New York, NY 10177
- and –
1100 Poydras Street, Suite 3200
New Orleans, LA 70163

For defendant The Boston Beer Company, Inc.:
Nixon Peabody LLP
George J. Skelly
Morgan C. Nighan
Richard A. McGuirk
Exchange Place
53 State Street
Boston, MA 02109
-and-
1300 Clinton Square
Rochester, NY 14604

For defendants David A. Burwick, Frank H. Smalla, and C. James
Koch:
Skadden, Arps, Slate, Meagher & Flom LLP
James R. Carroll
Kurt Wm. Hemr
Alexander C. Drylewski
One Manhattan West
New York, NY 10001
- and -
500 Boylston Street
Boston, MA 02116

DENISE COTE, District Judge:

Investors in the Boston Beer Company ("BBC") have brought
this putative securities class action against the company, its
CEO David A. Burwick, its CFO Frank H. Smalla, and its founder
and Chairman of the Board of Directors C. James Koch.  Lead
Plaintiff alleges that the defendants made misleading statements
related to the performance of BBC's products in the hard seltzer
market in 2021, but does not challenge the accuracy of any of
BBC's reported financial data.  The statements he challenges as
inaccurate are largely statements of optimism about BBC's
performance as the country emerged from the pandemic.  According
to Lead Plaintiff, the defendants' statements artificially
inflated the price of BBC's stock between April 22 and September
8, 2021 (the "Class Period").  The defendants have moved to
dismiss the complaint.  The defendants' motion is granted.

2

**Background**

The following facts are drawn from the Amended Complaint ("FAC") and documents relied upon by the FAC.  For the purposes of deciding this motion, Lead Plaintiff's factual allegations are accepted as true, and all reasonable inferences are drawn in Lead Plaintiff's favor.

BBC sells alcoholic beverages, including Truly hard seltzer ("Truly").  Truly is one of the leading brands in the hard seltzer market.  Hard seltzer has become increasingly popular in recent years, and the demand for hard seltzer boomed at the onset of the COVID-19 pandemic in March 2020.  Many people stocked up on hard seltzer as they remained in their homes, which increased off-premise -- that is, not in bars or restaurants -- consumption of Truly.  Largely due to Truly, BBC's revenue rose to $582 million in the first quarter of 2021, more than double its revenue in the same quarter of 2019.  As COVID-19 vaccines became widely available and the economy opened back up in the spring of 2021, however, sales of hard seltzer began to decline.  The hard seltzer market was shifting, in part due to increased on-premise consumption of beverages.  Bars did not offer as many hard seltzer brands as a consumer could find at a local retailer.

On April 22, 2021, BBC announced the company's financial results from the first quarter of 2021.  In the accompanying press release, Koch declared, "We are optimistic that our on-premise business will significantly improve in 2021 as restrictions are slowly lifted."  The company announced a $2 increase in the expected earnings per diluted share, projecting $22 to $26 per share.  The defendants made further statements reflecting their positive outlook for the year, including at the April 22 quarterly earnings call, at a May 12 panel at the 2021 Beverage Forum, and in a June 24 interview with the trade magazine Beer Business Daily.

Confidential Witness ("CW") 2, who held a role at BBC relating to the company's IT systems and processes that supported its supply chain, stated that as of March 2021, when he left BBC, the company lacked systems and personnel necessary to support long-range forecasting of demand.  CW1[1] stated that Truly sales had slowed by May 2021, and by mid-summer 2021, inventory of all BBC products was too high because it was not being sold fast enough.

On July 22, BBC announced decreased earnings for the second quarter and lowered the earnings per diluted share to between

[1] CW1 was BBC's District Manager in Northern California from May 2020 to August 2021.  CW1 worked with wholesalers who distributed BBC products.

$18 and $22.  In the accompanying press release, Koch acknowledged that the growth in the second quarter was "below [their] expectations."  At the July 22 quarterly earnings call, Smalla stated that "we were expecting a slowdown in May and June," but "the slowdown was a little bit stronger than what we had expected."  After the July 22 announcement, BBC's stock price dropped 26%.  In a television interview on July 23, Burwick stated that BBC began to notice the shift in the market "around Memorial Day."

On June 9, Burwick sold approximately $1.5 million worth of stock.  Between Memorial Day and July 8, 2021, Koch sold approximately $69 million worth of his stock.

On September 8, BBC withdrew the guidance it had issued in July, stating that for the year 2021 earnings per diluted share would "fall below the previously reported estimate."  BBC noted the "decelerating growth trends" in the hard seltzer market in its press release.  The company also stated that it "expect[ed] to incur hard seltzer-related write-offs" and other costs during the remainder of fiscal year 2021.  After this, the stock price fell another 10%.

On October 21, BBC announced a net loss in earnings in the third quarter, noting a $133 million write-off.  The next day,

Koch stated in an interview that BBC had destroyed "millions of cases" of Truly due to a decrease in demand.

This action was filed on September 14, 2021.  On December 14, Ayhan Hassan was appointed Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PLSRA"), 15 U.S.C. § 78u-4(a)(3).  This action was also consolidated with another putative securities class action in the Southern District of New York, Mark Huber et al. v. The Boston Beer Company et al., 21cv8338.  Lead Plaintiff filed the FAC on January 13, 2022.  The FAC alleges (1) that the defendants violated § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, and (2) that Burwick, Smalla, and Koch violated § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  The defendants moved to dismiss the FAC on March 16.  The motion became fully submitted on May 9.  This case was reassigned to this Court on August 17.

## Discussion

To survive a motion to dismiss for failure to state a claim, the complaint "must plead enough facts to state a claim to relief that is plausible on its face."  Green v. Dep't of Educ. of the City of New York, 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

6

(2007)).  In securities fraud actions, "[t]he Court may also consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff upon which it relied in bringing the suit." Tongue v. Sanofi, 816 F.3d 199, 209 (2d Cir. 2016) (citation omitted).

Under SEC Rule 10b-5, it is unlawful to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security."  17 C.F.R. § 240.10b-5; see also 15 U.S.C. § 78j(b).  "Section 20(a) provides that individual executives, as controlling persons of a company, are secondarily liable for their company's violations of the Exchange Act." Altimeo Asset Mgmt. v. Qihoo 260 Tech. Co. Ltd., 19 F.4th 145, 152 (2d Cir. 2021) (citation omitted).

Complaints alleging securities fraud violations are subject to a heightened pleading standard pursuant to the PSLRA and Rule 9(b), Fed. R. Civ. P.

> To state a claim for relief under § 10(b) and Rule 10b-5, a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the

        proximate cause of its injury.  In addition, because
        such a claim sounds in fraud, the plaintiff must state
        with particularity the circumstances constituting
        fraud.

Altimeo Asset Mgmt., 19 F.4th at 149-50 (citation omitted).

"The PSLRA requires plaintiffs to specify each misleading

statement; set forth the facts on which a belief that a

statement is misleading was formed; and state with particularity

facts giving rise to a strong inference that the defendant acted

with the required state of mind."  In re Synchrony Fin. Sec.

Litig., 988 F.3d 157, 167 (2d Cir. 2021) (citation omitted).

    The defendants argue (1) that Lead Plaintiff has failed to

plead statements that qualify as material misrepresentations,

and (2) that Lead Plaintiff has failed to adequately plead

scienter.  Because the FAC fails to state a claim of a material

misrepresentation, it is not necessary to assess the adequacy of

its assertion of scienter.

I.   Legal Standard

    A.   Material Misrepresentations or Omissions

    "A statement is materially misleading when the defendants'

representations, taken together and in context, would have

misled a reasonable investor."  Altimeo Asset Mgmt., 19 F.4th at

151 (citation omitted).  "To be material, a statement must, in

the view of a reasonable investor, have significantly altered

the total mix of information available."  Plumber & Steamfitters

<u>Local 773 Pension Fund v. Danske Bank A/S</u>, 11 F.4th 90, 100-01
(2d Cir. 2021) (citation omitted).  "Omissions are material when
there is a substantial likelihood that the disclosure of the
omitted fact would have been viewed by the reasonable investor
as having significantly altered the total mix of information
made available."  <u>Altimeo Asset Mgmt.</u>, 19 F.4th at 151 (citation
omitted).  "Absent an actual statement, a complete failure to
make a statement -- in other words, a pure omission -- is
actionable under the securities laws only when the corporation
is subject to a duty to disclose the omitted facts."  <u>In re
Vivendi, S.A. Sec. Litig.</u>, 838 F.3d 223, 239 (2d Cir. 2016)
(citation omitted).

    B.   Opinion

    To adequately plead a misleading statement of opinion,

> [t]he investor must identify particular (and material)
> facts going to the basis for the issuer's opinion -- facts
> about the inquiry the issuer did or did not conduct or the
> knowledge it did or did not have -- whose omission makes
> the opinion statement at issue misleading to a reasonable
> person reading the statement fairly and in context.

<u>Tongue</u>, 816 F.3d at 209 (quoting <u>Omnicare, Inc. v. Laborers
Dist. Council Constr. Ind. Pension Fund</u>, 575 U.S. 175, 194
(2015)).  The investor must show (1) "that a statement of
opinion contained one or more embedded factual statements that
can be proven false," or (2) "that a statement of opinion,
without providing critical context, implied facts that can be

proven false." Abramson v. Newlink Genetics Corp., 965 F.3d 165, 175 (2d Cir. 2020).  A reasonable investor understands, however, that "opinions sometimes rest on a weighing of competing facts," and that it "is not necessarily misleading when an issuer knows, but fails to disclose, some fact cutting the other way." Tongue, 816 F.3d at 210 (citation omitted). Moreover, "[g]eneric, indefinite statements of corporate optimism typically are not actionable." Abramson, 965 F.3d at 173.

C.   Forward-Looking Statements

Forward-looking statements are not actionable under the PSLRA "if (1) the forward-looking statement is identified and accompanied by meaningful cautionary language, (2) the forward-looking statement is immaterial, or (3) the plaintiff fails to prove that the forward-looking statement was made with actual knowledge that it was false or misleading." In re Vivendi, 838 F.3d at 245 (quoting Slayton v. Am. Express Co., 604 F.3d 758, 766 (2d Cir. 2010)).  "[A] forward-looking statement is protected . . . if any of the three prongs applies." Id. at 245-46.  When the forward-looking statement is made at the time a company makes a filing with the SEC that contains meaningful cautionary language on the topic, the cautionary language in the filing protects the contemporaneous forward-looking statement.

II.  Application

The FAC asserts that eleven statements made by the defendants between April 22 and June 24, 2021 are actionable as false and materially misleading,[2] even though BBC accurately reported its financial results during the same period.  Most of the statements were made in connection with the filing of BBC's First Quarter Form 10-Q on April 22, 2021 ("April Statements") and will be addressed as a group.  Two statements were made at the 2021 Beverage Forum ("Beverage Forum") on May 12, 2021.  Finally, the FAC relies on one statement made in a June 24, 2021 Beer Business Daily article.  Each accused statement is recited below and underlined for emphasis.

A.  April Statements

On April 22, 2021, BBC filed its First Quarter Form 10-Q ("Form 10-Q").  The FAC recites a series of statements that appeared in the April 22 Press Release ("Press Release") and the earnings call of the same day, and one statement that appears in the Form 10-Q, asserting that each was false.  Most of the statements are either inactionable statements of opinion and/or forward-looking statements.  For the statements that are

_____

[2] The FAC recites several other statements but does not explain how these statements are materially false and misleading.

11

assertions of fact, the FAC does not adequately plead that any were false or materially misleading.

All of the April Statements on which the FAC relies were accompanied by cautionary language.  For example, the Form 10-Q stated:

> In this Quarterly Report on Form 10-Q and in other documents incorporated herein, as well as in oral statements made by the Company, statements that are prefaced with the words "may," "will," "expect," "anticipate," "continue," "estimate," "project," "intend," "designed" and similar expressions, are intended to identify forward-looking statements regarding events, conditions, and financial trends that may affect the Company's future plans of operations, business strategy, results of operations and financial position.  These statements are based on the Company's current expectations and estimates as to prospective events and circumstances about which the Company can give no firm assurance.

The Press Release included similar language:

> Statements made in this press release that state the Company's or management's intentions, hopes, beliefs, expectations, or predictions of the future are forward-looking statements.  It is important to note that the Company's actual results could differ materially from those projected in such forward-looking statements.

In the quarterly earnings call, Burwick also prefaced his comments with a "disclaimer," saying:

> As we state in our earnings release, some of the information we discuss in the release that may come up on this call reflect the company's or management's expectations for or predictions for the future.  Such predictions and the like are forward-looking statements.  It's important to note that the company's

actual results could differ materially from those
projected in such forward-looking statements.

Lead Plaintiff alleges that three statements in the Press
Release are materially false and misleading.  The Press Release
begins by reporting BBC's net revenue of $545.1 million for the
first quarter of 2021 and noting the 64.9% increase in revenue
as compared to the first quarter of 2020.  The Press Release
goes on to recite some highlights from the quarter and
underscores BBC's intention to keep working hard to meet
consumer demand as the world reopened from the pandemic.  The
highlights included the company's guidance that for year of
2021, the earnings per diluted share would be between $22 and
$26.  Then, Koch is quoted as stating,

> Early in 2021, we launched Truly Iced Tea Hard Seltzer
> and during the second quarter we plan to launch Truly
> Punch Hard Seltzer.  Both combine refreshing hard
> seltzer with bold flavors and we believe these new
> launches continue to demonstrate our innovation
> leadership within the Hard Seltzer category.  We are
> making steady progress in improving our brand support
> and messaging for our beer and cider brands to
> position them for long-term sustainable growth in the
> face of the difficult on-premise environment.  We are
> optimistic that our on-premise business will
> significantly improve in 2021 as restrictions are
> slowly lifted.

(emphasis added).  A lengthy quotation from Burwick followed.
He discussed the strengths and weaknesses of several BBC
products, including the recently launched Truly Iced Tea Hard
Seltzer that was significantly contributing to Truly's brand

growth.  Burwick also spoke to the launch of another Truly

product -- Truly Punch Hard Seltzer -- in the second quarter,

which he expected to lead to more growth.  Burwick concluded:

> Our Samuel Adams, Angry Orchard, and Dogfish Head
> brands were hit the most by COVID-19 and the related
> on-premise closures.  We continue to work hard on
> returning these brands to growth and are optimistic
> that they will return to growth in 2021.  Overall,
> given the trends for the first three months and our
> current view of the remainder of the year, we've
> adjusted our expectations for higher 2021 full-year
> volume and earnings growth, which is primarily driven
> by the strong performance of our Truly and Twisted Tea
> Brands.[3]

(emphasis supplied).  Burwick continued by discussing BBC's

long-term plans for growth, including transforming BBC's supply

chain to be more efficient.  He stated:

> We expect to complete this transformation over the
> next two to three years.  We will continue to invest
> in capacity to take advantage of the fast-growing hard
> seltzer category and deliver against the increased
> demand through a combination of internal capacity
> increases and higher usage of third-party breweries.

(emphasis supplied).  The remainder of the Press Release

summarized the financial results from the first quarter and

outlined the company's outlook for the full year of 2021.

BBC held the earnings call that same day.  Koch began the

call by recognizing that the world was "slowly reopen[ing]" as

the pandemic was "wind[ing] down."  He also repeated many of the

---

[3] The FAC also quotes this same language from Burwick in the
earnings call as an actionable statement.

highlights listed in the Press Release.  Then, Burwick repeated

many of the statements contained in the Press Release, and

Smalla spoke to the company's financial condition in the first

quarter of 2021.  After these statements, the call was opened up

for questions.  Burwick was first asked about full year growth

in the hard seltzer category:

> Question:  So with 13-week depletions having come in
> only 3 points ahead of the top end of your previous
> guidance and with the growth in the hard seltzer
> category having decelerated notably since March, can
> you all offer an updated view on full year growth for
> the hard seltzer category just considering how tough
> the comps will continue to be?
>
> BURWICK: . . . [W]e still think the category is going
> to grow significantly.  And we think it's probably 60%
> to 90% versus, say, 70% to 100%.  But it could exceed
> the 90% depending on how it's going to grow.  And we
> look at -- again, some of the tailwinds that we
> validate the model with to grow in that range of 60%
> to 90% even plus.  First of all, the consumer trends
> are still there, right?  So you drive for health and
> wellness, for [IDCP], premiumization, they're still
> there, they're still evident. . . .  And the last
> thing I'd say is that hard seltzer's really -- the
> occasion speaks to simple occasions with people
> gathered together, whether it be barbecues, the beach,
> parties, events.  So we think based on what we've seen
> at some of the markets that are opening up kind of
> soon, we still see a very strong off-premise business.
> So we think, again, there's a lot of reasons why we
> believe that category will actually now start to
> reaccelerate, and that's part of our calculation.

(emphasis added).  Burwick then addressed the following question

about on-premise consumption of hard seltzer:

> Question:  Congrats on a great quarter.  I guess I
> wanted to ask a follow-up on something that I think

you were just discussing, Dave. . . .  [J]ust thinking
about bars and restaurants opening up, I guess there's
a bit of a view that this could negatively pressure
the hard seltzer category.  So I'd love to hear maybe
a little more thought on this and what you see as the
real opportunity for seltzers on-premise?  I mean do
you guys think of this as a headwind or quite possibly
a tailwind for the category?  And then any visibility
so far with things opening?  Are you seeing maybe
greater interest for hard seltzers now on-premise?
And ultimately, what's your strategy with Truly there?
I think that would help and frame everything and
possibly that's contributing to your increased
guidance on depletions.

BURWICK: . . . We're seeing a lot of growth right now,
definitely bar calls out there for the hard seltzer
brands.  And our on-premise team has been out actively
selling and making a lot of progress on driving
distribution within that channel.  So we feel very
optimistic that we're going to have a lot of Truly in
the category in general. . . .  So I think we see two
things here, one where we really believe that people
are going to be asking for Truly and other hard
seltzer brands in on-premise right now, but we also
see people continue to do things out at home and
having parties and other social occasions which gives
way to the category.  So I think obviously, time will
tell.  The next call, we'll have more data.  But right
now, as you know, the country is opening up pretty
gradually.  But what we see is it looks good for the
category.

(emphasis supplied).

Next, Burwick was asked about Truly's market share:

Question:  So I guess the question is, what's the
visibility on the market share?  And really, I guess,
the reason to sort of increase the guidance at this
juncture, just given the flood of competition and the
amount of investment that's coming into space.  So a
lot there, but comments really specific on market
share visibility.

After discussing different factors that supported his optimism for Truly's growth, Burwick concluded:

> BURWICK: . . . [W]e're going to plate [sic] the entire year to grow share. So it's one thing to -- again, the category grows 60 to 90. Honestly, whatever it is, we're going to grow faster. That's what's happening and as the category grows 50 and we grow 70; [indiscernible] grows 90, we grow 110 going forward. But we believe, with the innovation we have lined up, and by the way, the brand investments, which is significant -- and a lot used to come -- still to come on the brand, we feel like [we've been lit and lined up] to withstand the competition, as good as they are.

(emphasis added). The earnings call included additional questions and answers before ending.

The FAC identifies one statement from the Form 10-Q as materially false and misleading. In relevant part, the Form 10-Q stated:

> Shipment volume for the quarter was significantly higher than depletions volume and resulted in significantly higher distributor inventory as of March 27, 2021 when compared to March 28, 2020. The Company believes distributor inventory as of March 27, 2021 averaged approximately 7 weeks on hand and was at an appropriate level, based on supply chain capacity constraints and inventory requirements to support the forecasted growth of Truly and Twisted Tea brands over the summer.

(emphasis supplied).

The FAC does not plausibly allege that the April Statements are actionable. Most of the April Statements are statements of opinion. The FAC does not plead that these statements of opinion contained embedded factual statements that were false or

implied facts that were false.  Many of these statements of
opinion express optimism about Truly's ability to compete within
the hard seltzer category and within the on-premise market for
hard seltzer, and many of them express optimism for the
product's success over the course of the year.  Expressions of
optimism are not generally actionable, and the FAC does not
plausibly allege that these particular statements are so.
Further, the forward-looking statements were accompanied by
cautionary language.

Only three of the April Statements merit a more extended
discussion.  These statements arguably contain embedded factual
representations.  In the Press Release and the earnings call,
Burwick described the hard seltzer category as fast-growing.  In
the Press Release, he explained that BBC was transforming its
supply chain to take advantage "of the fast-growing hard seltzer
category."  In the earnings call, he responded to a question
with the explanation that "we're seeing a lot of growth right
now" in the hard seltzer category.  The third statement concerns
inventory levels and appears in the Form 10-Q.  The FAC
identifies the misstatement in the Form 10-Q as BBC "believes
distributor inventory as of March 27, 2021 averaged
approximately 7 weeks on hand."  This statement is part of a
disclosure that current inventory in the hands of distributors

was significantly higher than it was a year ago and is
accompanied by the statement that BBC viewed the current
inventory as being "at an appropriate level" for various
reasons.

To support the FAC's allegations that the statements about
the hard seltzer market's growth were false, the FAC states that
"industry trends, both historically and at the time this
statement was made, did not demonstrate 'a lot of growth' in the
demand for hard seltzer at bars and restaurants" and that
"demand for hard seltzer was slowing, not 'fast-growing,'" but
offers no facts or figures to support the FAC's
characterizations.  Of course, statements about the hard seltzer
market generally were not facts in the unique possession of BBC.
Any number of companies competing in that market and analysts
following that market had data at their fingertips to test the
reliability of BBC's own observations about the state of the
industry.  In any event, the FAC's conclusory characterizations
about sales in the hard seltzer category are insufficient to
plead that the BBC statements about the category's growth were
false.

As to the Form 10-Q statement regarding the increase in
BBC's inventory, Lead Plaintiff points to CW1's report that in
2021, inventory was piling up because shipments were outpacing

demand.  The FAC adds CW1's statement that sales of Truly had
slowed by May 2021 and that by the summer of 2021, sales of all
products had slowed.  Lead Plaintiff argues that BBC was
engaging in "channel stuffing," meaning that the company was
shipping more products to distributors than it could sell so
that the company could report higher sales.  These allegations
do not suggest, however, that the Form 10-Q contained a false
statement.  Both the Form 10-Q and the FAC describe an increase
in inventory.  Accordingly, the FAC does not adequately plead
that the Form 10-Q statement was false.

Lead Plaintiff makes essentially three arguments in support
of his claim that one or more of the April Statements was false
or misleading.  None of these arguments succeeds.

First, the FAC points to statements that the defendants
made after April 2021 as proof that the April Statements were
false when made.  In those later statements, the defendants
refer to expected slowdowns in sales,[4] the difficulties of
selling hard seltzer on-premise, and the declining importance of
health and wellness trends in the hard seltzer market.  None of
these statements, each of which was made after April, plausibly

---

[4] The FAC highlights Burwick's statement in May 2021 that getting
hard seltzer into the on-premise market was "not going to be
easy" and Smalla's statement on a July 22, 2021 quarterly
earnings call that "we were expecting a slowdown in May and
June."

allege that the April Statements of opinion embedded actual
statements that can be proven false as of the date they were
made.  Many of the later statements are not even inconsistent
with the statements expressing optimism in April.  Even where
later statements reflect increased caution or reduced optimism,
none of the later statements can be reasonably read to impute
actual knowledge of falsity as to statements made in April.
Furthermore, as to the forward-looking statements on which the
FAC relies, the defendants' cautionary language around the April
Statements makes them inactionable.

     Lead Plaintiff next argues, based on information received
from CW2, that BBC's "flawed and outdated forecasting system"
meant that BBC could not reliably predict future performance.
Lead Plaintiff also argues that the defendants should have
understood from the increase in inventory that demand for their
products would not increase as they were forecasting.  These two
allegations, however, are insufficient to convert statements of
opinion into statements of fact, to undercut the strength of the
cautionary language that surrounded BBC's forward-looking
statements, or to plead falsity.

     Finally, in opposing this motion to dismiss, the Lead
Plaintiff argues that the defendants omitted material
information when they failed to disclose that BBC's flawed

forecasting system prevented it from accurately forecasting demand.  While the FAC refers to this asserted omission, it does not actually plead a violation of the securities laws based on this omission.  Nonetheless, even if the FAC may fairly be read to plead such a claim, the claim must be dismissed.  The FAC does not plead that BBC had any independent duty to describe the sufficiency of its forecasting processes to the public.  Nor does the FAC adequately plead that BBC had to describe the reliability of its forecasting mechanisms in order to prevent any particular disclosure it did make from being misleading, including any description of BBC's systems in its Form 10-Q. Finally, it is worth emphasizing again, that all of the forward-looking statements made in April were protected by adequate cautionary language.

B.   Beverage Forum

On May 12, 2021, Koch spoke at the 2021 Beverage Forum on a panel discussion moderated by Michael Bellas.  Lead Plaintiff alleges that statements made in three portions of the panel discussion were materially false and misleading.  The FAC's claims based on these statements must also be dismissed.  Again, the accused statements are highlighted.

Bellas first asked Koch about the hard seltzer market:

BELLAS: Your Truly brand has been at the forefront of the hard seltzer movement in the United States.  And after 130

22

percent growth in the category last year, the category has
slowed in recent months, again, it just -- albeit to tough
comparisons to the pantry-loading of last year.  How do you
see the overall hard seltzer market progressing this year,
Jim?

KOCH: Well we're expecting, uh, something of a
slowdown but, you know, not falling off a cliff.  I
think our best guesses now are somewhere between 60
and 90 percent [growth].  The last few weeks have been
a bit turbulent.  When you're looking at the kind of
COVID mess from last year, I think year to date, the
hard seltzer category off-premise is up in the low
50s.  You add the on-premise back, maybe that's high
50s.  So that's kind of where the low end of our range
has been, about 60 percent.  And with Truly, we -- we
have been gaining share for, like, a year and a half.
We expect that we'll continue to gain share in 2021.

(emphasis supplied).

Bellas then asked Koch about the underlying factors that

were driving the growth of the hard seltzer category:

BELLAS: Okay.  You know, I know when I look at each --
every -- the various beverage categories, there are
always underlying drivers that spur the category
forward.  Are those -- what were the original ones,
and are they changing?  How do you think they'll
change going forward?

After listing several factors, such as health and wellness,

flavor variety, and general convenience, Koch concluded:

KOCH: So those benefits I think are very enduring and
powerful, and they're real advantages.  I do see
continued growth for hard seltzer, certainly well
beyond 2021.

(emphasis supplied).  Bellas and Koch then discussed the role of

flavor innovation in the hard seltzer category.  After that,

Bellas turned to the topic of on-premise channels:

23

BELLAS: Let me ask you about -- we're now seeing the on-premise opening up across the country, which is really good news.  How important to hard seltzers will be the opening up of this new -- really new channel, on-premise for hard seltzer going forward?

KOCH:  Well, for Boston Beer, on-premise has always been a key driver of trial and brand building. . . .  So they will be important.  It's a big growth area because, you know, pre-COVID, I think Boston Beer and, you now, Mark Anthony and White Claw, they -- we were both poised to make a big push on-premise and then, wham, on-premise just shut down.  So what we were going to do a year ago, we're in the process of doing now.  <u>I do think it will be a significant source of growth for 2021</u>.  And we are encountering a lot less resistance on-premise.  Two, three years ago, your bar owners were very uncertain about hard seltzers, because they were afraid that they would take away from mixed drinks, where they made a lot of money.  Now hard seltzers are big enough and accepted enough that on-premise operators know that they need to have them, and they're less afraid of them than they were in the past.  <u>So I think this is the year for acceptance of hard seltzer on-premise</u>.

(emphasis supplied).  The discussion then turned to the beer market generally, the prospects for future entrants into the hard seltzer category, and potential threats to the category's success before concluding.

    The FAC does not plausibly plead that any of the statements was materially false or misleading.  At the panel discussion, Koch was asked to make predictions about the hard seltzer market as the country emerged from the pandemic and consumers returned to bars.  The statements Koch made about what he thought and believed would happen are quintessential statements of opinion

about the future.  He explained that Truly was well positioned within the hard seltzer category even as BBC was expecting a slowdown in the hard seltzer market.  He also explained why he was optimistic that bar owners would be more accepting of hard seltzer than they had been.  The FAC does not plausibly allege that any of these statements included facts or implied facts that were false or that they were made with actual knowledge of their falsity.

Only one statement requires further discussion.  Koch stated that Truly had "been gaining share for, like, a year and a half."  The FAC alleges that this is false because Truly's market share as of May 2021 -- 26% -- was the same as it had been in December 2019.  But as the defendants point out, the FAC has misread the source upon which it relies.  The 26% figure cited for December 2019 reflected the market share for the full year of 2019.  Examining the data from another source upon which the FAC relies -- an equities research report on the hard seltzer market published by the firm Jeffries -- shows that Truly's market share had been growing over the year-and-a-half period before May 2021.  Therefore, Lead Plaintiff has not adequately pled that any statement made at the Beverage Forum was false or misleading.

C.   June 24, 2021 <u>Beer Business Daily</u> Article

Finally, Lead Plaintiff asserts that one statement quoted in a June 24, 2021 <u>Beer Business Daily</u> article was materially false and misleading.  The claim based on this statement must also be dismissed.

In the article, Burwick was quoted in the following excerpt.  The alleged false statement is underscored.

> Yesterday, we shared some of the latest share and brand trends from the fast-growing Truly franchise. But we reached out to Boston Beer CEO Dave Burwick to dig deeper. . . .
>
> ON SELTZER'S CHANCES TO DOUBLE.  We asked Dave: Does he believe that they could still double the seltzer business this year?  That's looking tough, considering the YTD growth rates.
>
> "<u>We're still confident in Truly's ability to grow significantly despite the recent segment slowdown</u>," he said.  "<u>Truly is the only established player that's growing at high double digits, growing at double the segment</u>, and YTD represents about 40% of all growth in the HSW category."

The first sentence of the statement about the company's "confidence" is an expression of general corporate optimism and is not actionable.  The FAC does not adequately plead that the statement that Truly was growing in the "high double digits" is false or misleading.

To support its contention that the statement about double digit growth is false, the FAC refers to a statement made by Burwick in a July 2021 earnings call.  The FAC asserts that

26

Burwick described Truly as having a "low" double-digit growth rate as of June 2021, rather than a "high" double-digit growth rate.  The relevant portion of the earnings call follows.  When the entire passage is read, it becomes apparent that Burwick was describing the growth rate for the category, not for Truly, as being in the low double-digits in June.  He said during the earnings call:

> I think, first of all, when we spoke in our call in April, everything at that point, we'd hurdled that first big COVID saga period in March and April.  We hurdled it really well and so did the category.  And even to the moment of our call, we felt really confident on where the category was going.  And what seemed to happen really, the May, June stock-up overlap, we really hit -- we kind of hit that inflection point in the S curve where things [went] from high double-digit growth rate to low double-digit growth rate.  And that was the first signal really as we got into May and June, and we had expected to hit that second bump better.

(emphasis supplied).

Accordingly, the FAC fails to plausibly allege a basis to find that the statement in the June Beer Business Daily article was false when made.  The FAC's § 10(b)(5) claim must be dismissed.

D.   § 20(a) Claims

Section 20(a) of the Securities Exchange Act holds individuals secondarily liable for violations of § 10(b).  Because Lead Plaintiff has failed to state a claim under § 10(b)

27

of the Securities Exchange Act, his claims under § 20(a) are also dismissed.

III. Request for Leave to Amend

Lead Plaintiff requests that, if the defendants' motion to dismiss is granted, he be given leave to amend the FAC.  In general, leave to amend should be "freely give[n] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend may be denied, however, "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." Eastman Kodak Co. v. Henry Bath LLC, 936 F.3d 86, 98 (2d Cir. 2019) (citation omitted).  Additionally, a plaintiff "need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint."  TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014).

Lead Plaintiff's request for leave to amend is denied. Lead Plaintiff has not identified how further amendment would address the deficiencies in FAC.  The statements included in the FAC fail to state a claim under the Exchange Act, and as such, amendment would be futile.

## Conclusion

The defendants' March 16, 2022 motion to dismiss is granted.  The Clerk of Court shall enter judgement for the defendants and close the case.


Dated:    New York, New York
          December 5, 2022


                              _____
                              DENISE COTE
                         United States District Judge

29